# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

NEAMA EL SAYED RAMADAN;
GASSER HISHAM EL GENDY,
                  *Petitioners,*

         v.

ALBERTO R. GONZALES,* Attorney
General,

               *Respondent.*

No. 03-74351

Agency Nos.
A79-561-874
A79-561-875

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
August 12, 2005—San Francisco, California

Filed November 2, 2005

Before: Harry Pregerson, Michael Daly Hawkins, and
Sidney R. Thomas, Circuit Judges.

Opinion by Judge Hawkins

---

*Alberto R. Gonzales is substituted for his predecessor, John Ashcroft, as Attorney General of the United States, pursuant to Fed. R. App. P. 43(c)(2).

15035

## COUNSEL

Amos Lawrence, San Francisco, California, for the petitioners.

Carl H. McIntyre, Jr., Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Washington, D.C., for the respondent.

## OPINION

HAWKINS, Circuit Judge:

In an issue of first impression in this circuit, we address the effect of the recently passed REAL ID Act, Pub L. No. 109-13 § 106(a) (2005), on our jurisdiction to review an agency decision under 8 U.S.C. § 1158(a)(2). In this case, the immigration judge ("IJ") determined that the petitioner was ineligible to apply for asylum because the asylum application was not filed within one year after the last entry into the United States (the "one-year bar") and that there were no "changed circumstances" that materially affected the petitioner's eligibility for asylum. We conclude that such a determination is essentially factual, and thus not a "question of law" within the meaning of the REAL ID Act. We therefore lack jurisdiction to review any claim regarding the petitioner's asylum application, and deny the petition as it pertains to withholding of removal.

## FACTS AND PROCEDURAL HISTORY[1]

Lead petitioner Neama El Sayed Ramadan ("Ramadan")[2] was born in Egypt. She attended the University of Alexandria and obtained degrees in physical education and rhythmic gymnastics. She taught gymnastics at the University, and also taught aerobics at a private athletic club in Alexandria, near her home. Over the years, she periodically quit working to

---

[1]The IJ specifically found that Ramadan testified credibly and that her testimony would be given full weight.

[2]Ramadan also filed a derivative application on behalf of her son, Gasser Hisham El Gendy.

visit her husband in the United States — in 1992, 1994, 1996 and 1999 — but would resume work upon returning to Egypt.

While Ramadan was a student, she frequently engaged in debates with other students and faculty regarding the role of women in Muslim society. Ramadan believed "a woman should have her own opinion and should have her own way of living." She also dressed in western attire, such as mini-skirts, and did not wear a hijab.

As a result of her opinions and her dress, Ramadan encountered "problems" with the men in her family and also other Islamic men. She testified that her father and brothers would beat her, and that members of a nearby mosque would call her names and talk to her in a vicious way. She also received phone threats from Muslim groups such as Jama Islamia, whose members would intercept her while walking home. She did not indicate the substance of those threats, and testified that she had never been physically attacked.

In 1999, some individuals stopped her on her way home and told her "if you don't stop the way you talk and the way you dress we're gonna kidnap your children." At this point in time, one son was living with her in Egypt, and her other children were living in the United States with other family. Ramadan testified that her fear for her son's well-being prompted her last trip to the United States, and that at that time she decided not to return to Egypt.

Ramadan reported one incident to the local police in 1995 and, although the police tried to open a case, they ultimately told her she had no evidence or proof and thus did not continue their investigation. She did not report the threat in 1999 because she believed the police would also tell her that she should be a typical Muslim woman.

Ramadan last entered the United States in September 1999. Her visa expired in March 2000, and she filed an application

for an extension in April 2000. In February 2001, Ramadan, along with about 100-120 other people, attended a meeting at a friend's house in San Francisco. At this meeting, Ramadan had a discussion about women's liberty and the role of women in Egypt.[3] Shortly after the meeting, Ramadan received a call from her parents and from a friend in Egypt, indicating that someone was looking for her and that they would "teach her a lesson" if she returned from the United States, apparently because of the opinions Ramadan expressed at this meeting.

In June 2001, Ramadan applied for asylum, fearing a return to Egypt because of the threats made in 1999 and the recent events that had been relayed to her by her family. The IJ found that she had failed to file her application for asylum within one year of entering the United States, and that the new threats were not materially different from the prior ones so as to constitute a "changed circumstance" that could excuse the late filing. The IJ found that the events that occurred in Egypt did not amount to past persecution, and that she had not demonstrated that it was "more likely than not" she would suffer future persecution, so as to qualify for withholding of removal or relief under the Convention Against Torture.[4] The Board of Immigration Appeals ("BIA") summarily affirmed, and this appeal followed.

## DISCUSSION

### I.   One-Year Asylum Bar

[1] Pursuant to 8 U.S.C. § 1158(a)(2)(B), an application for political asylum is untimely if filed more than one year after

---

[3]It is not entirely clear from the testimony whether Ramadan was a speaker, a member of a panel discussion, or simply an attendee of the meeting.

[4]Ramadan does not challenge the IJ's Convention Against Torture decision in this appeal.

the alien's arrival in the United States. Ramadan last entered the United States on September 30, 1999, and thus had until September 30, 2000 to file her application, unless she qualified for an exception to the one-year bar. She did not file her application until sometime the following year, in June 2001.

Ramadan argues she was still eligible to file an application because of "changed circumstances" that materially affected her eligibility for relief. 8 U.S.C. 1158(a)(2)(D); *see also* 8 C.F.R. § 208.4(a)(4)(i)(B) (such changes may include "activities the applicant becomes involved in outside the country of feared persecution that place the applicant at risk"). The IJ determined that Ramadan had failed to establish such material changes.

**[2]** As we have previously explained, this court is precluded from reviewing any determination about the one-year asylum bar by 8 U.S.C. § 1158(a)(3). *See Hakeem v. INS*, 273 F.3d 812, 815 (9th Cir. 2001). This clear, jurisdiction-stripping provision is muddied, however, by the REAL ID Act, which was signed into law on May 11, 2005. As relevant here, Section 106 of the Act modifies aspects of judicial review over final orders of removal. It provides:

> Nothing in . . . any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of *constitutional claims or questions of law* raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.

8 U.S.C. § 1252(a)(2)(D) (as amended) (emphasis added). This provision, which is effective immediately, thus restores jurisdiction previously precluded, at least insofar as a petition for review raises constitutional claims or questions of law. *See Fernandez-Ruiz v. Gonzales*, 410 F.3d 585, 587 (9th Cir. 2005).

**[3]** Ramadan raises no constitutional claim in her petition for review, leaving the question of whether Ramadan is appealing a "question[ ] of law." However, the existence of "changed circumstances" that materially affect eligibility for asylum is a predominately factual determination, which will invariably turn on the facts of a given case. *Cf. Vasile v. Gonzales*, 417 F.3d 766, 768-69 (7th Cir. 2005) (challenge to one-year bar and/or existence of changed circumstances "simply does not fit" in the "question of law" category).

**[4]** Should there be any doubt about the meaning of the term "questions of law" in the REAL ID Act, the legislative history makes it abundantly clear this term refers to a narrow category of issues regarding statutory construction. For example, the Conference Committee Report states "[T]he purpose of [§106] is to permit judicial review over those issues that were historically reviewable on habeas — *constitutional and statutory-construction* questions, not discretionary or factual questions." Conference Committee Statement, 151 Cong. Rec. H2813-01, H2873, 2005 WL 1025891 (May 3, 2005) (emphasis added).[5]

**[5]** Likewise, although the final bill deleted an amendment that would have qualified the term "questions of law" with the word "pure," the Conference Report explains that "pure" was deleted from the final version of the legislation because it was viewed as superfluous. *Id.* According to the Committee, a " 'question of law' is a question regarding the construction of a statute;" in contrast, factual questions would include decisions that would ordinarily be reviewed under the "substantial evidence" standard. *Id.*

**[6]** Ramadan's appeal, therefore, does not present any

---

[5]The Committee thus noted that, for example, the scope of review criminal aliens currently receive would not change "because habeas review does not cover discretionary determinations or factual issues that do not implicate constitutional due process." 151 Cong. Rec. at H2873.

"questions of law." She does not challenge the IJ's construction of the statute, but rather challenges the IJ's conclusion that the facts of her case do not demonstrate, to the satisfaction of the Attorney General, "changed circumstances" so as to excuse the late filing. We therefore remain precluded from reviewing the denial of Ramadan's asylum application by 8 U.S.C. § 1158(a)(3), and dismiss this portion of Ramadan's appeal for lack of jurisdiction.[6] *Accord Chacon-Botero v. U.S. Atty. Gen.*, ___ F.3d ___, 2005 WL 2456877 *2 (11th Cir. 2005); *Vasile*, 417 F.3d at 768-69.

II.   Withholding of Removal[7]

**[7]** To establish eligibility for relief from removal, an alien has the burden of showing that it is "more likely than not" that she will suffer persecution on account of race, religion, nationality, membership in a particular social group or political opinion. *Chand v. INS*, 222 F.3d 1066, 1079 (9th Cir. 2000). If the applicant has suffered past persecution, she is entitled to a presumption of qualification for withholding of removal unless there has been a fundamental change in country conditions or persecution could be avoided by relocating. 8 C.F.R. § 208.16(b)(1)(i).

Ramadan concedes that the harassment she suffered in Egypt prior to her departure does not rise to the level of past persecution. She notes that "[w]hile these persistent encounters over this lengthy period of time have obviously caused Ms. Ramadan considerable emotional distress, her prior treat-

---

[6]We note that Ramadan does not assert that the IJ's decision was procedurally unfair or so arbitrary as to violate due process. *Cf. Grass v. Gonzales*, 418 F.3d 876, 879 (8th Cir. 2005) (holding that REAL ID Act did not grant jurisdiction "to review an IJ's purely discretionary decision to deny a continuance of a removal hearing, unless that ruling resulted in such procedural unfairness as to implicate due process").

[7]Because the one-year bar only applies to asylum applications, we still have jurisdiction to review the denial of Ramadan's claim for withholding of removal. *See Hakeem*, 273 F.3d at 816.

ment by members of this organization constituted nothing more than harassment in the absence of any objective basis for believing that members of this entity actually intended to implement such threats." She also correctly observes that courts have rejected claims for asylum based on a woman's lack of conformity with Islamic custom and dress. *See, e.g.*, *Fisher v. INS*, 79 F.3d 955, 961-62 (9th Cir. 1996).

Ramadan basically argues that the threats made against her after she attended the San Francisco meeting are different. She contends that, unlike the past threats, this one "supports the inference that Muslim fundamentalists . . . intend to punish her on account of the religious and political opinions she has expressed since coming to the United States" or, in other words, that there is now a sufficient nexus to a protected ground. The problem with this argument is that the threat, at best, "supports the inference" — it does not compel it. *See INS v. Elias-Zacarias*, 502 U.S. 478, 481 & n.1 (1992) (agency determination reversible only if a reasonable factfinder compelled to reach contrary conclusion).

**[8]** Moreover, irrespective of motive, the record does not compel the conclusion that it is "more likely than not" that Ramadan would suffer persecution if returned to Egypt. Ramadan was never actually harmed by those who threatened her while she lived in Egypt, undermining the claim that they were sufficiently motivated to act on their threats. The record does not reveal a reason to take the most recent inquiries about her whereabouts more seriously. Even if the recent threats could support an objective fear of future persecution — perhaps sufficient for an asylum claim, in which a ten percent chance of persecution could suffice[8] — it is too speculative to vault Ramadan over the much higher threshold for withholding of removal. *See Lim v. INS*, 224 F.3d 929, 937-38 (9th Cir. 2000) (finding that although petitioner was eligible for asylum based on death threats, record was insufficient to

---

[8]*INS v. Cardoza-Fonseca*, 480 U.S. 421, 440 (1987).

qualify petitioner for withholding of removal). We therefore deny Ramadan's petition for review with respect to her withholding of removal claim.

## CONCLUSION

Although the REAL ID Act expanded this court's jurisdiction over certain petitions for review, Ramadan does not raise any constitutional claims or questions of law in her petition, and thus our jurisdiction over her asylum application is still precluded by 8 U.S.C. § 1158(a)(3). We therefore dismiss the portion of Ramadan's appeal that pertains to her asylum application.

We deny Ramadan's petition with respect to the claim for withholding of removal. The evidence does not compel the conclusion that it is "more likely than not" that she will suffer persecution on account of a protected ground if she is returned to Egypt.

DISMISSED IN PART; DENIED IN PART.