**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

NEAMA EL SAYED RAMADAN; GASER
HESHAM EL GENDY,

　　　　　　　　　*Petitioners,*

　　　　　v.

ALBERTO R. GONZALES, Attorney
General,

　　　　　　　　　*Respondent.*

No. 03-74351

Agency Nos.
A79-561-874
A79-561-875

ORDER AND
OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
August 12, 2005—San Francisco, California
Opinion Filed November 2, 2005
Reheard and Resubmitted
July 25, 2006—San Francisco, California
Opinion Withdrawn February 22, 2007

Filed February 22, 2007

Before: Harry Pregerson, Michael Daly Hawkins, and
Sidney R. Thomas, Circuit Judges.

Per Curiam Opinion

2023

## COUNSEL

Amos Lawrence, San Francisco, California, for the petitioners.

Peter D. Keisler, Richard M. Evans, Carl J. McIntyre, Jr., David J. Kline, Bryan S. Beier, Washington, D.C., for the respondent.

Lucas Guttentag, Jennifer Chang, Oakland, California; Lee Gelernt, Omar C. Jadwat, New York, New York; Mary Kenney, Washington, D.C., for amici curiae American Civil Liberties Union Foundation Immigrants' Rights Project and American Immigration Law Foundation.

---

## ORDER

With the granting of the petition for rehearing, the opinion filed on November 2, 2005, is withdrawn and the attached opinion is hereby filed. No further petitions for rehearing or rehearing en banc will be entertained.

---

## OPINION

PER CURIAM:

We granted rehearing in this case to reconsider the scope of our jurisdiction under the Real ID Act, Pub L. No. 109-13 § 106(a) (2005), to review an agency decision under 8 U.S.C. § 1158(a)(2). When we originally decided this case, we determined that the phrase "questions of law" in section 106 of the Real ID Act "refer[red] to a narrow category of issues regarding statutory construction." *Ramadan v. Gonzales*, 427 F.3d 1218, 1222 (9th Cir. 2005). As a consequence, we concluded that we lacked jurisdiction to review the Immigration Judge's ("IJ") determination that Petitioner Ramadan had failed to show changed circumstances to excuse the late filing of her application for asylum. *Id.*

We now hold that our jurisdiction over "questions of law" as defined in the Real ID Act includes not only "pure" issues of statutory interpretation, but also application of law to undisputed facts, sometimes referred to as mixed questions of law and fact. *See Pullman-Standard v. Swint*, 456 U.S. 273,

289 n.19 (1982) (defining mixed questions as those "in which the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard, or to put it another way, whether the rule of law as applied to the established facts is or is not violated"). By implying a fixed dichotomy between fact and law, our brief initial opinion inadvertently failed to consider an important category of cases—those that raise mixed questions of law and fact. We join the Second Circuit in holding that "questions of law" is broader than just statutory interpretation. *Chen v. Gonzales*, 471 F.3d 315, 326-27 (2d Cir. 2006) ("We construe the intent of Congress's restoration under the Real ID Act rubric of 'constitutional claims or questions of law' to encompass the same types of issues that courts traditionally exercised in habeas review over Executive detentions"). Our conclusion is compelled by the congressional intent underlying the enactment of the Real ID Act and principles of statutory interpretation, most importantly the doctrine of constitutional avoidance. This renewed discussion is primarily framed by the Supreme Court's decision in *INS v. St. Cyr*, 533 U.S. 289 (2001), and the subsequent enactment of the Real ID Act in response to that decision.

In reassessing our opinion in view of these considerations, we conclude that we have jurisdiction to review Ramadan's challenge to the IJ's determination that Ramadan failed to show changed circumstances to excuse the untimely filing of her application for asylum. Conducting such review, we hold that the record does not compel the contrary conclusion.

Our jurisdiction over Ramadan's application for withholding of removal was unaffected by our interpretation of section 106, and with respect to withholding, we continue to find that "the record does not compel the conclusion that it is 'more likely than not' that Ramadan would suffer persecution if returned to Egypt." *Ramadan*, 427 F.3d at 1223. We therefore deny the petition for review as to both asylum and withholding of removal.

## I

We detailed the facts and procedural history of this case in our prior opinion. *Id.* at 1220. Lead petitioner Neama El Sayed Ramadan is a native and citizen of Egypt. She earned degrees in physical education and rhythmic gymnastics from the University of Alexandria and then began teaching gymnastics and aerobics in Alexandria. Believing that "a woman should have her own opinion and should have her own way of living," Ramadan dressed in western attire and was consistently outspoken about her beliefs. As a result, she had problems with Islamic men, receiving threats in several instances. In 1999, Ramadan was again threatened, this time with the kidnaping of her son. This prompted her to leave Egypt for the United States with her son, where her husband and other family lived. *Id.* She arrived in September 1999. *Id.*

In February 2001, Ramadan attended a meeting with some 100-120 other people in San Francisco, where she participated in a discussion about women's liberty and role in Egypt. *Id.* at 1221. Shortly thereafter, Ramadan's parents and a friend in Egypt informed her that, because of the opinions she had expressed at the San Francisco meeting, someone in Egypt was looking for her and making threats as to what would happen if she were to return to Egypt. *Id.*

In June 2001, Ramadan filed applications for asylum and withholding of removal, claiming that she feared returning to Egypt on the basis of the threats she had experienced both before and after her arrival in the United States. Both applications were denied by an IJ.[1] Ramadan conceded that she failed to file her asylum application within one year of entry into the United States, as is required under 8 U.S.C. § 1158(a)(2)(B), but argued before the IJ that her application could be considered based on "changed circumstances" that materially

_____

[1]The IJ also denied Ramadan's application for relief under the Convention Against Torture, but she does not challenge that decision here.

affected her eligibility for relief. 8 U.S.C. § 1158(a)(2)(D); 8 C.F.R. § 208.4. The IJ rejected the claim of changed circumstances and found Ramadan's asylum application untimely. The IJ also rejected Ramadan's application for withholding of removal, because she had not shown that it was "more likely than not" that she would be persecuted were she to return to Egypt. The Board of Immigration Appeals ("BIA") summarily affirmed the IJ's decision, and Ramadan timely filed this petition for review.

II

As always, "we 'have jurisdiction to determine whether jurisdiction exists.' " *Flores-Miramontes v. INS*, 212 F.3d 1133, 1135 (9th Cir. 2000) (quoting *Aragon-Ayon v. INS*, 206 F.3d 847, 849 (9th Cir. 2000)). Our jurisdiction to review the agency's denial of Ramadan's application for withholding of removal is conferred by 8 U.S.C. § 1252(a). *Hakeem v. INS*, 273 F.3d 812, 816 (9th Cir. 2001).

**[1]** The issue of our jurisdiction to review the denial of Ramadan's asylum application is more complicated. Under 8 U.S.C. § 1158(a)(2)(B), an alien seeking asylum must file an application within one year of arrival in the United States, unless one of two statutory exceptions applies. *See* 8 U.S.C. § 1158(a)(2)(D) (late applications may be considered "if the alien demonstrates to the satisfaction of the Attorney General either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application"); 8 C.F.R. § 208.4(a)(4)(i) (listing examples of "changed circumstances . . . materially affecting the applicant's eligibility for asylum"); 8 C.F.R. § 208.4(a)(5)(i) - (iv) (listing examples of "extraordinary circumstances . . . directly related to the failure to meet the one-year deadline"). Ramadan argues that the IJ should have considered her asylum application because changed circumstances materially affected her eligibility for relief.

**[2]** Whether we can review the IJ's determination that Ramadan had not shown such changed circumstances depends on the extent to which section 106 of the Real ID Act restores our jurisdiction. Prior to the passage of the Real ID Act, 8 U.S.C. § 1158(a)(3) precluded our review of any determination relating to the application of the one-year bar.[2] *Hakeem*, 273 F.3d at 815. Section 106 of the Real ID Act of 2005 restores our jurisdiction over "constitutional claims or questions of law."[3] *Fernandez Ruiz v. Gonzales*, 410 F.3d 585, 587 (9th Cir. 2005). Our jurisdiction therefore turns on whether the "changed circumstances" claim presents a "question of law": if it does, section 106 restores our jurisdiction, but if it does not, the § 1158(a)(3) jurisdictional bar applies and we lack jurisdiction.[4] In our prior opinion, we held that "questions of law" meant only "a narrow category of issues regarding statutory construction." *Ramadan*, 427 F.3d at 1222. "Changed circumstances," we held, was an "essentially factual [question] and thus not a 'question of law' within the

---

[2] 8 U.S.C. § 1158(a)(3) provides that "[n]o court shall have jurisdiction to review any determination of the Attorney General under paragraph (2)." 8 U.S.C. § 1158(a)(2)(D) permits the consideration of asylum applications filed beyond the one year deadline "if the alien demonstrates to the satisfaction of the Attorney General . . . the existence of changed circumstances which materially affect the applicant's eligibility for asylum."

[3] Section 106 of the Real ID Act modified 8 U.S.C. § 1252(a)(2)(D) to read:

> Nothing in . . . any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.

Real ID Act of 2005, Pub. L. 109-13, 119 Stat. 231, codified as amended at 8 U.S.C. § 1252(a)(2)(D).

[4] Because Ramadan neither disputes the IJ's factual determination that she had filed her asylum application more than one year after her arrival in the United States, nor argues that there were constitutional dimensions to her claim, only the "questions of law" clause is relevant to the issue of our jurisdiction.

meaning of the Real ID Act." *Id.* at 1220. We now hold that "questions of law," as it is used in section 106, extends to questions involving the application of statutes or regulations to undisputed facts, sometimes referred to as mixed questions of fact and law. Further, we hold that the "changed circumstances" question presented by Ramadan's petition is a question of the application of a statutory standard to undisputed facts, over which we have jurisdiction.

## III

We are mindful of the legal development—both legislative and judicial—that has led to the current constraints on judicial review of immigration decisions, presently embodied in the Real ID Act. Notably, Congress consciously deemed the history of judicial review over immigration decisions relevant to the enactment of the Real ID Act, as indicated by the House Conference Committee Report on the Act. *See* H.R. Rep. No. 109-72, at 174-75 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 240, 299 (describing in detail the development of federal review over immigration agency decisions, from the pre-1996 regime until the time of enactment).

Until the passage of the 1952 Immigration and Nationality Act ("INA"), a habeas petition was the only mechanism by which an alien could challenge a deportation order. *Zank v. Landon*, 205 F.2d 615, 616 (9th Cir. 1953) (noting that "a deportation may be attacked only in a habeas corpus proceeding"); *Heikkila v. Barber*, 345 U.S. 229, 235 (1953) ("Now, as before, [the appellant] may attack a deportation order only by habeas corpus."). After 1952, the judicial review provisions of the Administrative Procedure Act ("APA") were made applicable to cases arising under the INA. *Shaughnessy v. Pedreiro*, 349 U.S. 48 (1955). "Habeas Corpus came to be employed as a nominal vehicle for judicial review under the standards of the APA, largely interchangeable with other procedural vehicles, and the focus on the constitutional minimum faded into history." Gerald L. Neuman, *Habeas Corpus, Exec-*

*utive Detention, and the Removal of Aliens*, 98 Colum. L. Rev. 961, 1020 (1998). From 1953 to 1961, habeas corpus remained the primary remedy in immigration cases.

With enactment of amendments to the INA in 1961, Congress established a base grant of judicial review through petitions for review of final deportation orders, and established a new specific habeas remedy in INA § 106(a)(10). Congress specified that deportation orders were to be challenged via petitions for review in the courts of appeals, effectively streamlining such review. Act of Sept. 26, 1961, Pub. L. No. 87-301, § 5, 75 Stat. 651 (codified as amended at 8 U.S.C. § 1105(a) (repealed 1996)).

However, in 1996 Congress altered this scheme of review, enacting the Antiterrorist and Effective Death Penalty Act ("AEDPA"). Pub. L. No. 104-132, 110 Stat. 1214 (1996). Section 440(a) of the Act precluded all judicial review of final removal orders of aliens deported for committing certain types of crimes, also known as "criminal aliens." *See* AEDPA § 440(a), 8 U.S.C. § 1105a(1)(10) (West Supp. 1998). Congress also passed the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") that year, expanding AEDPA's preclusion of review over criminal alien deportation orders and further limiting review over many discretionary agency decisions. Pub. L. No. 104-208, 110 Stat. 3009-549 (1996) (codified at 8 U.S.C. § 1252 (2000)).

In *INS v. St. Cyr*, the Supreme Court determined the scope of judicial review in a post-AEDPA/IIRIRA regime in light of the requirements of the Suspension Clause of the Constitution.[5] 533 U.S. 289 (2001). St. Cyr, an alien convicted of an aggra-

---

[5]The Suspension Clause reads: "The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." United States Constitution, Article I, § 9. *See generally*, W. H. Rehnquist, *All the Laws But One: Civil Liberties in Wartime* (1998).

vated felony, petitioned for habeas review of a "pure" question of law in district court under the general federal habeas corpus provision, 22 U.S.C. § 2241, notwithstanding AEDPA and IIRIRA's express prohibition on judicial review of deportation orders for such criminal aliens.[6] *Id.* at 293, 298. The Court held that Congress did not strip the district courts of jurisdiction to decide petitions brought by criminal aliens like St. Cyr under general habeas review, reasoning that Congress did not speak sufficiently clearly to wholly preclude judicial review of a pure question of law—an action that would "raise serious constitutional questions." *Id.* at 301-314. According to the Court, wholesale repeal of habeas jurisdiction over pure questions of law would be constitutionally suspect because, "at the absolute minimum, the Suspension Clause protects the writ 'as it existed in 1789,' " and there was sufficient historical evidence to indicate that pure questions of law like the one raised by St. Cyr would have been answered in 1789.[7] *Id.* at 301-305. This conclusion was further compelled by the strong presumption of judicial review over administrative action and the presumption against repeals of habeas jurisdiction. *Id.* at 298.

**[3]** Importantly, *St. Cyr* helped define the historical scope of questions of law, stating: "[I]ssuance of the writ . . . encompassed detentions based on errors of law, *including the erroneous application or interpretation of statutes.*" *Id.* at 302

---

[6]Specifically, St. Cyr raised the question of whether the Attorney General lacked authority under AEDPA and IIRIRA to grant discretionary relief from deportation for noncitizens convicted of aggravated felonies—a "pure" question of law, according to the *St. Cyr* Court. *St. Cyr*, 533 U.S. at 293.

[7]However, the *St. Cyr* Court did indicate that the Constitution might not require habeas review in the district courts, stating that: "Congress could, without raising any Constitutional questions, provide an adequate substitute though the courts of appeals." 533 U.S. at 314 n.38. The Real ID Act accepted this invitation and streamlined judicial review of removal orders, clearly stating that questions of law be reviewed exclusively in the courts of appeal.

(emphasis added). *See also Chen*, 471 F.3d at 327-28 (relying on same passage and discussing the history of habeas review). Further, the Court cited *Mahler v. Eby*, 264 U.S. 32, 46 (1924)—which the Court characterized as resolving the question of "whether the absence of an explicit factual finding that the aliens were 'undesirable' invalidated the warrant of deportation"—to support its proposition that courts would answer questions of law in determining the legality of an Executive detention during the pre-INA regime. *St. Cyr*, 533 U.S. at 306-07 n.29. *St. Cyr* therefore indicates that mixed questions of fact and law—those involving an application of law to undisputed fact—should be provided meaningful judicial review, lest serious constitutional questions be raised. Moreover, under the pre-INA habeas regime, mixed questions of law and fact have been historically reviewable on habeas, further supporting the proposition that such questions are entitled to some form of review. *See* Gerald L. Neuman, *The Real ID Act and the Suspension Clause*, 10-20 Bender's Immigr. Bull. 1 (2005) (Oct. 15, 2005) ("[C]ase law of the pre-INA period and post-St. Cyr cases in the courts of appeals illustrate that the traditional scope of review also extends to 'mixed' questions of law and fact, in the sense of the application of legal standards to the facts as found by the administrative agency." (citing *Mahler*; *Delgadillo v. Carmichael*, 332 U.S. 388 (1947) (habeas review of deportation order determining that a noncitizen's return to the United States under "fortuitous and capricious" circumstances did not constitute an "entry"); *Hansen v. Haff*, 291 U.S. 559 (1934) (determining on habeas review whether an alien entered for an "immoral purpose"); *Cadet v. Bulger*, 377 F.3d 1173 (11th Cir. 2004); *Bakhtriger v. Elwood*, 360 F.3d 414 (3d Cir. 2004); *Wang v. Ashcroft*, 320 F.3d 130 (2d Cir. 2003)).

**[4]** *St. Cyr* left instructions for both Congress and the lower courts, with a view to conform with the requirements of the Suspension Clause: Congress was required to provide adequate and effective review for all aliens subject to removal; we are required to interpret congressional enact-

ments restricting the right to review consistent with the mandates of the Suspension Clause. Congress assumed this task in enacting the Real ID Act, with the explicit intent to give "every alien one day in the court of appeals, satisfying constitutional concerns," H.R. Rep. No. 109-72, at 175 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 240, 299, and we are compelled to interpret the Act accordingly. *See Chen*, 471 F.3d at 326-27 (noting Congress' intent to comply with *St. Cyr* in enacting the Real ID Act).

**[5]** The Real ID Act repeals general habeas corpus jurisdiction over orders of removal, but provides us jurisdiction over "questions of law." However, the judicial review clause of the Act does not address whether we have jurisdiction over mixed questions of law and fact—those situations in which the historical facts and applicable legal standard are undisputed but the agency's application of those facts to law are at issue. Real ID Act § 106(a)(1)(A)(iii) (codified at 8 U.S.C. § 1252(a)(2)(C)). *See also Chen*, 471 F.3d at 324-25 (finding the term "questions of law" to be ambiguous and turning to legislative history for guidance). Therefore, we look to the legislative history of the Real ID Act to determine congressional intent. *See Bates v. United Parcel Service, Inc.*, 465 F.3d 1069, 1082 (9th Cir. 2006) (noting that reference to legislative history is appropriate if the statutory provision is ambiguous (citing *Coeur D'Alene Tribe v. Hammond*, 384 F.3d 674, 692 (9th Cir. 2004))). Although the Real ID Act was clearly prompted by a dissatisfaction with the post-*St. Cyr* system of review, Congress was careful to tailor its legislation to the constitutional requirements of the Suspension Clause, as announced by *St. Cyr*. H.R. Rep. No. 109-72, at 174-75 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 240, 299 (describing the two-tiered system of review that developed for criminal aliens after *St. Cyr* as the primary impetus for eliminating district court habeas review over orders of removal); *id.* (referencing *St. Cyr*'s constitutional mandate for adequate review and stating that section 106 was drafted to ensure such review). Because the Conference Report indicates congressio-

nal adherence to *St. Cyr*'s constitutional mandates, and because preclusion of judicial review over mixed questions of law and fact would raise serious constitutional questions under *St. Cyr*, the legislative history indicates that Congress intended to grant review over such questions. *Cf. Chen*, 471 F.3d at 378-28 (holding that because historical habeas review extended beyond statutory construction, as indicated in *St. Cyr*, the scope of "questions of law" of the Real ID Act was similarly extended). Indeed, the Conference Report explicitly envisions judicial review of mixed questions of law and fact, stating: "When a court is presented with a mixed question of law and fact, the court should analyze it to the extent that there are legal elements, but should not review any factual elements." *Id.* at 175. This statement squarely fits within our holding, which mandates review only when the underlying facts are undisputed.

   **[6]** It is important to note that the Conference Report also states that "the word 'pure,' in the phrase 'pure question of law,' which had appeared in prior versions . . . . has been deleted from that phrase in the final version in this subparagraph because it is superfluous." H.R. Rep. No. 109-72, at 174-75 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 240, 299. We are now persuaded that the deletion of the word 'pure,' coupled with the report's specific reference to mixed questions within the same paragraph and Congress' general intent to provide adequate and effective review in conformity with the Suspension Clause, indicates that questions of law includes mixed questions of law and fact. *Id. See also* Aaron G. Leiderman, Note, *Preserving the Constitution's Most Important Right: Judicial Review of Mixed Questions Under the Real ID Act*, 106 Colum. L. Rev. 1367, 1397 (2006). Similarly, in light of Congress' intent to comply with *St. Cyr*, we do not view Congress' description of the provision as encompassing "constitutional and statutory-construction questions," H.R. Rep. No. 109-72, at 175 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 240, 299, as an exhaustive list which constrains our interpretation. *See Chen*, 471 F.3d at 326 ("While the

Conference report refers to 'statutory construction questions,' we do not interpret that reference to be exhaustive, merely illustrative.").

As indicated by our discussion of *St. Cyr*, our conclusion is compelled by principles of constitutional avoidance, precluding a constitutionally suspect alternative. *Cf. St. Cyr*, 533 U.S. at 301 n.13 ("The fact that this Court would be required to answer the difficult question of what the Suspension Clause protects is in and of itself a reason to avoid answering the constitutional questions that would be raised by concluding that review was barred entirely."). *See also Kamara v. Atty. Gen.*, 420 F.2d 202, 211 & n.5 (3d Cir. 2005). The Supreme Court has been careful to construe statutes in light of the Suspension Clause. *See, e.g., St. Cyr*, 533 U.S. at 299-300 ("[I]f an otherwise acceptable construction of a statute would raise serious constitutional problems, and where an alternative interpretation of the statute is 'fairly possible,' we are obligated to construe the statute to avoid such problems." (quoting *Crowell v. Benson*, 285 U.S. 22, 62 (1932))).

**[7]** We therefore conclude that the phrase "questions of law" as it is used in section 106 of the Real ID Act includes review of the application of statutes and regulations[8] to undisputed historical facts. This construction is amply supported by the statute and legislative history, and a narrower interpretation would pose a serious Suspension Clause issue.

## IV

Before turning to the specifics of Ramadan's claim, we note that this case does not involve a challenge to the agency's exercise of discretion. Section 106 does not restore juris-

---

[8]*See Chen*, 471 F.3d at 327-30 (determining that because *St. Cyr* stated that interpretation of regulations was historically reviewed on habeas petition, "questions of law" in section 106 encompasses the interpretation of regulations).

diction over discretionary determinations. Because, however, review of such determinations was not traditionally available on habeas review, there is no Suspension Clause problem. *See St. Cyr*, 533 U.S. at 307 (referring to the "strong tradition in habeas corpus law . . . that subjects the legally erroneous failure to exercise discretion, unlike a substantively unwise exercise of discretion, to inquiry on the writ" (quoting Gerald L. Neuman, *Jurisdiction and the Rule of Law after the 1996 Immigration Act*, 113 Harv. L. Rev. 1963, 1991 (2000))); *Gutierrez-Chavez v. INS*, 298 F.3d 824, 828 (9th Cir. 2002) ("[H]abeas is not available to claim that the INS simply came to an unwise, yet lawful, conclusion when it did exercise its discretion."). Although we accept this, we dispute the government's characterization of the changed circumstances determination as "not only a 'predominately factual' inquiry, but also a discretionary determination," relying on the statutory requirement that changed circumstances be established "to the satisfaction of the Attorney General."

**[8]** The words "to the satisfaction of the Attorney General" do not render the changed circumstances determination discretionary. Instead, this phrase is a specification of *who* is to make the decision, rather than a characterization of that decision itself. We come to this conclusion for several reasons. First, when Congress wants to place something within the Attorney General's discretion, it either uses that word or a phrase that the courts have held to function in this way. *See Kalaw v. INS*, 133 F.3d 1147, 1152 (9th Cir. 1997) (analyzing the former 8 U.S.C. § 1254(a)(1), which read that "the Attorney General may, *in his discretion*, suspend deportation and adjust the status to that of an alien lawfully admitted for permanent residence" in the case of certain aliens) (emphasis added); 8 U.S.C. § 1182(c) (specifying classes of aliens who "may be admitted *in the discretion of* the Attorney General . . ." ) (emphasis added); *St. Cyr*, 533 U.S. at 293-94 (analyzing 8 U.S.C. § 1182(c) as "the law that gave the Attorney General discretion to waive deportation in certain cases"); *Matsuk v. INS*, 247 F.3d 999, 1002 (9th Cir. 2001) (character-

izing as discretionary the Attorney General's determination under 8 U.S.C. § 1231(b)(3)(B) that an aggravated felony is a particularly serious crime where statute says "if the Attorney General decides that . . .").[9] We have explicitly held that "to the satisfaction of the Attorney General" does *not* render a determination discretionary. *See Nakamoto v. Ashcroft*, 363 F.3d 874, 879-80 (9th Cir. 2004) (holding that a statutory section of the INA uses the phrases "to the satisfaction of the Attorney General" and "in the opinion of the Attorney General" merely to specify the identity of the decisionmaker, and not to make the determination discretionary).

Second, comparison to another statutory section further supports that the particular phrase "to the satisfaction of the Attorney General" does not trigger the Attorney General's discretion. Consider 8 U.S.C. § 1182(h), which reads in pertinent part:

> The Attorney General may, *in his discretion,* waive the application of subparagraphs (A)(i)(I), (B), (D), and (E) of subsection (a)(2) and subparagraph (A)(i)(II) of such subsection insofar as it relates to a single offense of simple possession of 30 grams or less of marijuana if—
>
> (1)(A) in the case of any immigrant it is established *to the satisfaction of the Attorney General* that—
>
> (i) the alien is inadmissible only under subparagraph (D)(i) or (D)(ii)of such subsection or the activities for which the alien is inadmissible occurred more than 15 years before the date of the alien's application for a visa, admission, or adjustment of status . . .

---

[9]This is particularly true where, as here, the statutory language of the jurisdictional bar requires such explicit specification. See 8 U.S.C. § 1252(a)(2)(B)(ii) ("[N]o court shall have jurisdiction to review . . . any decision of the Attorney General the authority for which is specified . . . to be in the discretion to the Attorney General. . . .").

(emphasis added). Because the Attorney General may grant a waiver "in his discretion" if certain things are "established to [his] satisfaction," these phrases must have different meanings, or the second one is rendered surplusage. *See Schneider v. Chertoff*, 450 F.3d 944, 954 (9th Cir. 2006) (internal citation omitted) ("We strive to avoid constructions that render words meaningless." (internal citation omitted)); *Williamson v. C.I.R.*, 974 F.2d 1525, 1531 (9th Cir. 1992) ("We are not at liberty to impose upon a statute a construction that renders parts of its language nugatory.").[10] *See also* 8 U.S.C. § 1182(a)(9)(B)(v) (emphasis added) ("The Attorney General *has sole discretion* to waive [the application of a particular] clause [ ] in the case of an immigrant who is the spouse or son or daughter of a United States citizen or of an alien lawfully admitted for permanent residence, if it is established *to the satisfaction* of the Attorney General that the refusal of admission to such immigrant alien would result in extreme hardship to the citizen or lawfully resident spouse or parent of such alien.").

Third, this conclusion is consistent with our precedent on the nature of discretionary determinations. As we stated in *Kalaw*:

> The plain language of IIRIRA precludes our direct review of the Attorney General's discretionary decisions. However, assessing some of the aspects of statutory eligibility for suspension of deportation requires application of law to factual determinations. As to those elements of statutory eligibility which do not involve the exercise of discretion, direct judicial review remains.

---

[10]Of course, the prohibition on statutory constructions that render some statutory language redundant also applies to the phrase "to the satisfaction of the Attorney General." Because we read this phrase "to specify the identity of the decision-maker," *Nakamoto v. Ashcroft*, 363 F.3d 874, 880 (9th Cir. 2004), there is no redundancy.

133 F.3d at 1150. Even there, where the statute explicitly designated the overall determination to be discretionary, we recognized that the application of law to fact does not entail the exercise of discretion. We held that only those determinations that can properly be characterized as "subjective," or "dependent . . . upon the identity of the person or entity examining the issue," such as "whether an alien has good moral character," were "discretionary" and beyond this court's review under IIRIRA's transitional jurisdictional provisions. *Id.* at 1151-52.

There is a significant difference between assessing the quality of an alien's moral character and whether changed circumstances have materially affected an alien's eligibility for asylum. While both determinations involve the exercise of judgment, the changed circumstances determination does not "depend[ ] upon the identity of the person or entity examining the issue," but rather is less value-laden and does not reflect the decision maker's beliefs in and assessment of worth and principle.[11]

V

[9] We now turn to Ramadan's claims. Ramadan's challenge to the IJ's determination that Ramadan failed to show changed circumstances is a reviewable mixed question of law and fact. The Supreme Court has defined such questions as those in which "the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard." *Swint*, 456 U.S. at 290 n.19. Here, the factual basis of Ramadan's petition is undis-

---

[11]We realize that other circuits hold the one-year bar to be a discretionary decision of the Attorney General. *See, e.g., Vasile v. Gonzales*, 417 F.3d 766, 768 (7th Cir. 2005); *Chacon-Botero v. U.S. Atty. Gen.*, 427 F.3d 954, 957 (11th Cir. 2005). However, because such a holding would conflict with other Ninth Circuit case law, as indicated in this section, we are compelled to hold to the contrary.

puted; we only review whether the IJ appropriately determined that the facts did not constitute "changed circumstances" as defined by immigration law. Although we have jurisdiction to hear Ramadan's petition, we hold that the record does not compel the conclusion that she has shown "changed circumstances" so that her asylum application should have been considered notwithstanding its late filing. As for the merits of her application for withholding of removal, unaffected by the jurisdictional bar, we continue to hold that the record does not compel the conclusion that Ramadan has shown that it is more likely than not that she would be persecuted were she to return to Egypt.

## A

**[10]** According to 8 U.S.C. § 1158(a)(2)(D), "[a]n [untimely] application for asylum of an alien may be considered . . . if the alien demonstrates to the satisfaction of the Attorney General . . . the existence of changed circumstances which materially affect the applicant's eligibility for asylum." The regulations provide illustrations of "changed circumstances" that meet this standard:

> The term "changed circumstances" in section 208(a)(2)(D) of the Act shall refer to circumstances materially affecting the applicant's eligibility for asylum. They may include, but are not limited to:
>
> (A)   Changes in conditions in the applicant's country of nationality . . .
>
> (B)   Changes in the applicant's circumstances that materially affect the applicant's eligibility for asylum, including changes in applicable U.S. law and activities the applicant becomes involved in outside the country of feared persecution that place the applicant at risk; or

(C)　In the case of an alien who had previously been included as a dependent in another alien's pending asylum application, the loss of the spousal or parent-child relationship to the principal applicant through marriage, divorce, or attainment of age 21.

8 C.F.R. § 208.4(a)(4)(i). Ramadan's claim faces a profound obstacle in that her testimony before the IJ belies her claim before us that her circumstances have changed. Therefore, rather than assessing whether certain changes rise to the level of "materially affecting" her eligibility for asylum, we affirm the IJ's conclusion on the grounds that we find no changes in Ramadan's circumstances at all since her arrival in the United States.

[11] To support the notion of "changes" in her "activities," Ramadan argues that the harassment that she experienced in Egypt was on account of her failure to conform to Muslim tradition, particularly, her Western attire and her occupation as an aerobics instructor, and that the persecution that she fears now is on account of the political opinions that she has expressed publicly since her arrival in the United States. The record does not support this distinction. During her hearing before the IJ, Ramadan testified that she had problems from "mostly the Islamic groups" because of her "outspoken" nature:

> A woman should have her own opinion and dependent's opinion should have a position in the society to choose her way of thinking and way of vindication. A woman should have her own way of thinking. She should be liberal from all the pressures that surrounding her from male in that society.

This testimony belies Ramadan's claim that the harassment she experienced in Egypt was on her clothing and her occupation, rather than on her political views, as well as her claim that now, unlike in the past, she fears persecution from Mus-

lim extremists. The record, therefore, does not compel the conclusion that Ramadan showed changed circumstances to excuse the late filing of her asylum application. We deny the petition for review with respect to the asylum claim.

B

**[12]** To establish eligibility for mandatory relief of withholding of removal, an alien must show that it is "more likely than not" that he or she will suffer persecution on account of race, religion, nationality, membership in a particular social group or political opinion. *Chand v. INS*, 222 F.3d 1066, 1079 (9th Cir. 2000). Ramadan concedes that the harassment that she suffered in Egypt does not rise to the level of persecution, and that she is therefore not entitled to a presumption of a well-founded fear of future persecution. 8 C.F.R. § 208.16(b)(1)(i). Instead, she argues that the threats made against her since her attendance at the San Francisco meeting are of a different character and are sufficiently severe that they compel us to find, in contrast to the IJ's finding, that she has a well-founded fear of future persecution upon which to base her eligibility for withholding. *See INS v. Elias-Zacarias*, 502 U.S. 478, 481 & n.1 (1992) (holding that an agency determination is reversible on petition for review only if a reasonable fact-finder would be compelled to reach the contrary conclusion on the basis of the evidence contained in the record). "The problem with this argument is that the threat[s] [she has received since coming to the United States], at best, 'support[ ] the inference—[they do] not compel it." *Ramadan*, 427 F.3d at 1223 (citing *Elias-Zacarias*, 502 U.S. at 481 & n.1). We therefore deny Ramadan's petition for review with respect to withholding of removal.

**PETITION DENIED.**