**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 3, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

JAMIDEN MANULLANG,

Petitioner,

v.

MICHAEL B. MUKASEY, United
States Attorney General,

Respondent.

No. 07-9579
(Petition for Review)

---

**ORDER AND JUDGMENT**[*]

---

Before **HARTZ**, **EBEL**, and **O'BRIEN**, Circuit Judges.

---

Jamiden Manullang petitions for review of an order of the Board of

Immigration Appeals (BIA) affirming the immigration judge's (IJ) denial of his

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

requests for asylum, restriction on removal,[1] and protection under the Convention Against Torture (CAT). We deny the petition for review.

## I. Background

According to his testimony, Manullang was raised as a Christian in Indonesia, attending Seventh Day Adventist schools as a child. While he was living in Indonesia, his father was kidnaped by Muslims and released a few hours later. After high school, Manullang went to the City of Bandung. While he lived there, he supported himself as a taxi driver and during that time he met his ex-wife, who was a passenger in his cab. His ex-wife (whom he never identifies by name) was a Muslim and came from a devout Muslim family. While they were dating, he tried to take his ex-wife to his church. Her family found out and was upset. They threatened him and said he had to become Muslim and marry their daughter.

He had been working as a private driver for his ex-wife's brother, but after he was threatened he went back to working as a taxi driver. One night, two men got into his cab, one of whom he recognized as his ex-wife's brother. One of the men put a knife to his throat and said they would kill him if he did not marry his

---

[1] Although Manullang and the agency refer to "withholding of removal," this language was changed to "restriction on removal" with the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA). Because this claim was filed after IIRIRA's effective date, we will use the term "restriction on removal." *See Yan v. Gonzales*, 438 F.3d 1249, 1251 n.1 (10th Cir. 2006).

ex-wife. He was thus forced to become a Muslim, marry his ex-wife, stay at the family's house and neither go out with nor have contact with his friends.

He had two children with his ex-wife. After his first child was born, he tried to run away, but was chased by a gang of men who were friends of his ex-wife's brother. They threw a knife at his leg, wounding him in the calf. He was then taken back to the family home. A few years later, he was able to escape after he received money and help from his brother who was living in California. Manullang arrived in the United States in August 1997. He was re-baptized as a Christian in the Seventh Day Adventist church, divorced his ex-wife in 2002 and married a Christian woman in 2003.

While living in the United States, he became involved with an organization called the Moluccas Sovereignty Front (also known as "FKM"). The Moluccan Islands had been independent but were taken over by Indonesia. The FKM was formed to promote the sovereignty of the Moluccan Islands. Manullang is not from the Moluccan Islands, but he is sympathetic to the Moluccan cause because he is Christian and most of the Moluccan people are Christian. As a member of FKM, he attended meetings of the group, made monetary contributions, and participated in a demonstration in front of the Indonesian consulate in April 2003.

Also in April 2003, he filed an application for asylum and restriction on removal. At his hearing before the IJ, he testified to fearing persecution by his former in-laws, who had forced him to become Muslim and marry his ex-wife,

-3-

and persecution by the government because of his FKM membership. The IJ ultimately denied his request for asylum, restriction on removal and relief under the CAT. The BIA affirmed. Manullang then petitioned this Court to review the BIA's decision.

## II. Discussion

The BIA affirmed the IJ's decision in a single-member brief order. *See* 8 C.F.R. § 1003.1(e)(5). In these circumstances, the BIA's decision is the final order of removal under review and "we will not affirm on grounds raised in the IJ decision unless they are relied upon by the BIA in its affirmance." *Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006). We review the BIA's legal conclusions de novo and review the agency's findings of fact applying the substantial evidence standard. *Elzour v. Ashcroft,* 378 F.3d 1143, 1150 (10th Cir. 2004).

<u>Asylum</u>

Manullang concedes he did not file a timely asylum application, but argues for an exception to the one-year filing deadline because he established "'changed circumstances' due to his increased involvement with the FKM." Pet'r Br. at 9. An untimely application may be considered "if the alien demonstrates to the satisfaction of the Attorney General . . . the existence of changed circumstances which materially affect the applicant's eligibility for asylum." 8 U.S.C. § 1158(a)(2)(D). The BIA affirmed the IJ's determination that Manullang's

asylum application was untimely and he had not demonstrated the existence of changed circumstances excusing his untimely filing. As Manullang acknowledges, under our precedent, *infra*, we lack jurisdiction to review the BIA's determination on this issue. Nevertheless, he urges us to follow a recent Ninth Circuit case, *Ramadan v. Gonzales*, 479 F.3d 646, 648 (9th Cir. 2007) (per curiam), in which the court decided it had jurisdiction to review this type of timeliness determination.

With the enactment of the REAL ID Act, we were granted jurisdiction to review challenges to an asylum timeliness determination involving "'constitutional claims or questions of law.'" *Diallo v. Gonzales*, 447 F.3d 1274, 1281 (10th Cir. 2006) (quoting 8 U.S.C. § 1252(a)(2)(D)). In *Diallo*, we held "questions of law" refer to issues involving statutory construction, *id*. at 1282, and we lack jurisdiction to review "challenges directed solely at the agency's discretionary and factual determinations," *id*. at 1281. Relying on *Diallo* in *Ferry v. Gonzales,* 457 F.3d 1117, 1130 (10th Cir. 2006)*,* we held a "[petitioner's] argument that his pending adjustment of status application qualified as either a changed or extraordinary circumstance to excuse his untimely asylum application is a challenge to an exercise of discretion that remains outside our scope of review."

Our precedent is clear – we lack jurisdiction to consider the type of challenge to the agency's discretionary decision presented by Manullang. We are

not free to depart from our precedent and embrace a decision by the Ninth Circuit. Moreover, as the dissent from the order denying rehearing en banc in *Ramadan* points out, the Ninth Circuit has now isolated itself as the only court of appeals to claim jurisdiction over the type of challenge presented here. *Ramadan v. Keisler*, 504 F.3d 973, 975 (9th Cir. 2007) (O'Scannlain, J., dissenting ) (collecting cases). Apart from our precedent we see no reason to follow the Ninth Circuit. Since we lack jurisdiction to second guess the agency's decision on changed circumstances, we move on to Manullang's other claims, which we are permitted to review.

Restriction on Removal

In order to be entitled to restriction on removal, Manullang must demonstrate that his "life or freedom would be threatened in the proposed country of removal on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 C.F.R. § 1208.16(b). He may meet his burden by proving either: (1) he suffered past persecution; or (2) it is more likely than not that he will suffer future persecution if he is removed to Indonesia. *See id*. § 1208.16(b)(1),(2).

At the hearing before the IJ, Manullang testified to fearing persecution from his former in-laws and persecution from the government because of his FKM membership. The BIA concluded he failed to meet his burden of proof for restriction on removal. Manullang asserts the BIA erred because: (1) the BIA failed to properly review the IJ's adverse credibility finding; (2) his claim of past

-6-

persecution is supported by substantial evidence; and (3) substantial evidence also supports a finding that he is more likely than not to be persecuted if removed to Indonesia.

*The IJ's credibility determination*

The IJ found "in many regards" Manullang's "testimony [was] vague and lacking in detail" and he was not a "particularly credible witness." Admin. R. at 80. On appeal to the BIA, Manullang argued the adverse credibility finding was clearly erroneous. The BIA acknowledged Manullang's arguments challenging the IJ's findings, including the adverse credibility determination. In response, the BIA stated its "analysis and conclusions on appeal were reached independent of these [credibility] concerns," and therefore it "need not reach those issue[s] on appeal." *Id*. at 4. It reiterated the point by stating: "In other words, those issues are not outcome determinative for the purposes of this appeal and will not be considered." *Id*.

On appeal to this court, Manullang argues, for the first time, the IJ's statements do not constitute an explicit adverse credibility finding and therefore we must accept all of his factual contentions as true. Alternatively, he argues if the IJ's statements amounted to an adverse credibility determination then it was erroneous and the BIA erred by not addressing the issue on appeal.

Because Manullang did not raise his first argument before the BIA, we may not consider it. *See Akinwunmi v. INS*, 194 F.3d 1340, 1341 (10th Cir. 1999)

("The failure to raise an issue on appeal to the Board constitutes failure to exhaust administrative remedies with respect to that question and deprives the Court of Appeals of jurisdiction to hear the matter." (quotation omitted)). As for his second argument, the BIA issued a "brief order, affirming, modifying or remanding under 1003.1(e)(5)." *Uanreroro,* 443 F.3d at 1204 (quotation omitted). In these circumstances, the BIA's decision is independent from the IJ's decision and the BIA's decision is the subject of our review. *Id.* Because the BIA affirmed the IJ's decision on other grounds we need not decide whether the IJ's adverse credibility finding was clearly erroneous. *See Uanreroro*, 443 F.3d at 1204 ("[W]e will not affirm on grounds raised in the IJ decision unless they are relied upon by the BIA in its affirmance.").

The BIA followed the proper procedure by discussing the issues from the IJ's decision it deemed dispositive, and reciting the issues it considered not to be outcome determinative, including the adverse credibility finding. *See id*. at 1205 ("[W]here the BIA chooses the (e)(5) brief order method, it is preferable for the BIA to tell us what reasons it deems dispositive"). Because the BIA concluded Manullang's claim failed on grounds unrelated to the IJ's credibility finding, it did not need to discuss that issue. *See id*. ("We must assume that the BIA intended only the reasons expressly stated in its decision."); *see also id*. at 1204 ("As long as the BIA decision contains a discernible substantive discussion . . . our review extends no further."). From its discussion of Manullang's claims it is

clear the BIA did consider and credit his testimony, but determined the testimony was insufficient to establish his entitlement to relief. *See*, *e.g.*, Admin. R. at 3 ("Manullang's testimony regarding his theory that the government is aware of his FKM [activities] provides very little insight into this issue."). We find no error in the BIA's treatment of the adverse credibility issue.

*Past Persecution*

If an alien establishes past persecution, it must be presumed he will be subject to future persecution. The presumption may be rebutted by a finding of "a fundamental change in circumstances such that the applicant's life or freedom would not be threatened . . . upon removal to [the proposed country of removal.]" 8 C.F.R. § 1208.16(b)(1)(i)(A). Manullang claims he presented evidence of past persecution by his former in-laws sufficient to entitle him to the presumption of future persecution.

In order to establish past persecution, Manullang must show not only actual persecution by some group but also demonstrate the government is "unwilling or unable to control" the persecutors. *Batalova v. Ashcroft*, 355 F.3d 1246, 1253 (10th Cir. 2004) (quotation omitted). He provided evidence of religious persecution by his ex-wife's family, but no evidence of the government's unwillingness or inability to protect him from that group.

But the BIA did not make an explicit finding as to whether Manullang had established past persecution. Instead, it said:

-9-

more than 10 years have passed since [Manullang] left Indonesia, [he] has divorced his ex-wife and has remarried, and [he] has not submitted any evidence indicating that his ex-in-laws have a current interest in harming him. Moreover, [he] has not established that the police would not provide him protection if they were to renew their interest in him.

Admin. R. at 3. It concluded "even if we were to find that [Manullang] suffered past persecution, we would nonetheless deny [his] [restriction on] removal claim because there has been a 'change in circumstances' such that [he] would no longer have a fear of persecution." *Id*. (quoting 8 C.F.R. § 1208.16(b)(1)(i)(A)). It appears Manullang's past persecution claim failed but we must accept the case as the BIA framed it and thus address the changed circumstances issue.

Manullang argues the changed circumstances finding is erroneous. He claims his former in-laws are "radical Muslims who will stop at nothing until they kill him." Pet'r Br. at 16. In support of this statement, he cites to testimony from his administrative hearing in which he stated that his ex-wife is a "radical Muslim" and "they could put [his] name [out] as one of the people that they need to kill[.]" Admin. R. at 143. Other than this vague and speculative testimony, Manullang points to no other evidence in the record to show his ex-wife's family has any knowledge of his whereabouts or that they would somehow renew their interest in him if he returned.

The BIA's common sense conclusion that circumstances have changed due to the passage of time is reasonable. Manullang has been absent from Indonesia

since 1997, divorced from his ex-wife since 2002 and remarried. The BIA recognized a decay factor with respect to the possible threat posed by the family of Manullang's ex-wife. The conclusion is particularly apt in light of a complete lack of proof as to the government's inability or unwillingness to protect Manullang.

*Future persecution*

Even though Manullang is not entitled to a presumption of future persecution, he may be eligible for restriction on removal based on proof of legitimate fear of future persecution. To establish legitimate fear of future persecution, he must prove "it is more likely than not he . . . would be persecuted on account of race, religion, nationality, membership in a particular social group, or political opinion upon removal" to Indonesia. 8 C.F.R. § 1208.16(b)(2).

The BIA's conclusion regarding changed conditions carries over to this issue. Manullang's fear is not well founded because of the passage of time. His former in-laws are most probably unaware of his circumstances and unlikely have no current interest in harming him. Moreover, nothing of record suggests the government would not protect him.

As to his claim of future persecution based on his FKM membership, the BIA concluded Manullang had not established the government was aware of his

limited FKM activities[2] or it would have any interest in harming him.  As the BIA explained:

> [Manullang] testified that he suspects that the government was able to identify him as a FKM member during a demonstration in California by taking photographs of him at the demonstration and comparing the photograph to his passport photograph. [Manullang], however, conceded that he was not present when the government made this alleged comparison and that he was not positive that such comparison actually took place.  Indeed, [Manullang] is not even certain that the photographer at the demonstration was associated with the government.

Admin. R. at 3 (citations to transcript omitted).

Manullang argues the BIA's decision is erroneous because he "has established that the government of Indonesia will persecute him *when* it becomes aware of his FKM involvement."  Pet'r Br. at 18 (emphasis added).  Through this statement he concedes the government does not currently know he is a member of FKM.  The BIA's conclusion that the government has no present interest in harming him would thus seem accurate.  But, Manullang also argues "*if* [he] were to return to Indonesia and *become an active FKM member*, it is more likely than not that the government of Indonesia would persecute him."  *Id*. (emphasis added).  Such speculation is insufficient to demonstrate he will "more likely than not" be persecuted upon his return to Indonesia.

---

[2]   Manullang testified that he joined the FKM in 2001 and while he was living in California he attended approximately twelve official meetings and one demonstration.  He explained, however, that since he has been living in Colorado, his FKM activity has been limited to making donations to the organization.

Manullang makes two final assertions relating to his status as a Christian and his alleged threat of future persecution. First, he contends he "faces [an] increased risk [of persecution] because he is a Christian who used to be a Muslim, also known as an apostate." *Id.* at 19. Because Manullang did not raise this issue in his hearing before the IJ, we may not review it. *See* 8 U.S.C. § 1252(d)(1) (failure to exhaust).

Second, he argues the BIA erred when it failed to analyze his claim for restriction on removal under the "pattern and practice"[3] standard based on his status as an Indonesian Christian. The BIA explained in its order:

> [Manullang] additionally argues that the [IJ] erred by not considering his claim that he will be harmed because he is Christian. [Manullang] failed to raise this claim before the [IJ]. Instead, [Manullang] concentrated on the alleged abuse he suffered at the hands of his ex-in-laws and the possibility of future harm due to his FKM membership. We will not consider claims first offered on appeal.

Admin. R. at 4 n.1. Manullang has pointed to no record evidence demonstrating a "pattern and practice" claim was raised during his hearing before the IJ and we have not discovered any such references during our review of the hearing transcript. The BIA did not err in declining to address his "pattern and practice" claim.

---

[3] An alien can establish a fear of future persecution if he establishes that there is a "pattern or practice of persecution of a group of persons similarly situated to the applicant," and he establishes his "own inclusion in and identification with such group of persons." 8 C.F.R. § 1208.16(b)(2)(i), (ii).

Convention Against Torture (CAT)

The BIA affirmed the IJ's determination that Manullang had not met his burden of proof for protection under the CAT, which requires him to establish that "he will more likely than not be tortured if returned to Indonesia." Admin. R. at 4 (citing to 8 C.F.R. § 1208.16(c)). Torture is defined as the "intentional[] inflict[ion]" of "severe pain or suffering, whether physical or mental, . . . when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1). The BIA again noted Manullang's failure to establish the government's awareness of his FKM activities or that his former in-laws had a current interest in harming him. In addition, the BIA found that Manullang had "not established that the Indonesian government would acquiesce in his torture." Admin. R. at 4.

Manullang has not presented evidence that he will be subject to torture at the hands of any group, including his former in-laws. Nor has he presented evidence that the Indonesian government would torture him or acquiesce in his torture by others. Sufficient evidence in the record supports the BIA's decision to

affirm the IJ's denial of Manullang's request for relief under the CAT.

The petition for review is DENIED.

Entered for the Court

Terrence L. O'Brien
Circuit Judge