# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

BHUPINDER SINGH,

　　　　　　　　　　*Petitioner,*

　　　　　　v.

ERIC H. HOLDER JR., Attorney
General,

　　　　　　　　　　*Respondent.*

No. 07-70056

Agency No.
A078-668-982

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
April 13, 2011—San Francisco, California

Filed September 8, 2011

Before: Sidney R. Thomas and Johnnie B. Rawlinson,
Circuit Judges, and Cormac J. Carney, District Judge.*

Opinion by Judge Thomas;
Concurrence by Judge Rawlinson

---

*The Honorable Cormac J. Carney, District Judge for the U.S. District
Court for Central California, Santa Ana, sitting by designation.

## COUNSEL

Kathleen Taylor, Law Office of Kuldip S. Dhariwal, Fremont, California, for petitioner Bhupinder Singh.

Tony West, Assistant Attorney General, Civil Division, Carol Federighi, Senior Litigation Counsel, Office of Immigration Litigation, Song E. Park, Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, D.C., for respondent United States of America.

**OPINION**

THOMAS, Circuit Judge:

In this petition for review, we consider whether the petitioner established changed or extraordinary circumstances that would excuse his untimely application for asylum. When the agency addressed this question, it applied incorrect legal standards. Accordingly, we grant Singh's petition for review and remand this matter to the BIA so that it may apply the correct standards.

I

Bhupinder Singh, a citizen and national of India, entered the United States on August 26, 1999, as a nonimmigrant visitor with initial authorization to remain until September 24, 1999. He fled India on account of abuse he suffered at the hands of police in India, who mistakenly believed that he sympathized with terrorists. The police arrested Singh, without a warrant, three times. Each time, they detained him for a lengthy period of time, up to four days, and questioned him about his activities and knowledge of suspected terrorists. When they detained him, the police severely beat Singh with sticks and leather straps until he lost consciousness. He required medical treatment after each of the three arrests. Singh was released from his first arrest after his parents guaranteed the police that they would watch over him. Singh was released from his third arrest only after his father paid a 60,000 rupee bribe to the police.

After being in the United States for about a month, Singh applied for an extension of his nonimmigrant visa on September 30, 1999. Singh claimed he wanted to stay in the United States because it was not safe to return to India. He hoped that, while he was in the United States, his family could arrange a "settlement" or "compromise" with the Indian

police that would allow him to return without being harassed or abused.

The former Immigration and Naturalization Service (now part of the Department of Homeland Security)[1] approved Singh's visa-extension request nearly a year later on August 17, 2000, retroactively effective. While his first request was pending, Singh submitted a second request to extend his visa to August 24, 2000.

Not long after Singh filed his second request, Indian police arrested Singh's wife at her home. According to Singh's wife's written statement,[2] the police came to her house late at night on September 6, 2000, asking questions about him and accusing him of being a militant. They then took Singh's wife into custody and "started slapping and dragging [her] and told [her] that now your husband will come to the police station." Singh's wife told the police she would file a complaint against them. The police then beat her with "wooden rods and told [her] that in the police station they were going to teach [her] how to file a complaint." Once at the police station, Singh's wife claims the officers locked her in a room, beat her again, and raped her.

Singh filed his application for asylum on November 20, 2000, two-and-a-half months after his wife's arrest. At the

---

[1] On March 1, 2003, the functions of the former INS were transferred from the Department of Justice to three agencies (the U.S. Immigration and Customs Enforcement, U.S. Customs and Border Protection, and U.S. Citizenship and Immigration Services) in the newly formed Department of Homeland Security. *See* Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135.

[2] Singh's wife was available to testify before the immigration judge ("IJ"), but she did not. The record does not indicate why she did not testify, but the IJ speculated that she did not want her husband to know what happened during the arrest.

time, Singh's second request for a visa extension was still pending.[3]

Because Singh's application for asylum was filed more than a year after he had first entered the United States, his application was untimely. 8 U.S.C. § 1158(a)(2)(B). The Department of Homeland Security referred his application to the immigration court and placed him in removal proceedings. The Department charged Singh as removable under 8 U.S.C. § 1227(a)(1)(B) for remaining in the United States longer than his visa permitted.

II

Singh conceded removability and sought asylum, withholding of removal, and protection under the Convention against Torture. The immigration judge ("IJ") found Singh's testimony credible, and he granted Singh's request for withholding of removal to India and protection under the Convention Against Torture.

As to Singh's asylum claim, the IJ concluded that Singh "has in fact been the victim of past persecution by inferences of a government who believes that he is an enemy, who believes he is politically affiliated with a community that seeks an independence." And:

> [B]ased upon past events it is more likely than not, assuming the truth of Mr. Singh's representations, that if he returns to his homeland he will be subject to the same form of maltreatment. Acts of persecution[,] because of political opinion[,] has [sic] been imputed to him, and there clearly exists a pattern and practice as represented in his application.

---

[3]Singh's second request for a visa extension was approved February 15, 2001, nearly six months after he filed the request. The second extension authorized Singh to remain in the United States until August 24, 2000, was deemed retroactively effective.

Singh's application was untimely, but he argued that his wife's arrest was a "changed circumstance" that excused the filing delay under 8 U.S.C. § 1158(a)(2)(D).[4] The IJ disagreed because Singh did not provide "clear and convincing" evidence that the settlement negotiations amounted to a changed circumstance (the IJ did not consider whether the arrest of Singh's wife was a changed circumstance). As a result, the IJ rejected Singh's asylum application as time-barred.

Singh timely appealed the IJ's decision to the BIA, which adopted the IJ's decision without opinion, citing *In re Burbano*, 20 I. & N. Dec. 872, 874 (BIA 1994) (noting that adoption or affirmance of a decision of an IJ, in whole or in part, is "simply a statement that the Board's conclusions upon review of the record coincide with those which the Immigration Judge articulated in his or her decision.").

Singh timely petitioned us to review the BIA's order, but, while that petition was pending, the Government filed an unopposed motion to remand the matter to the BIA so that it could determine whether Singh had established "extraordinary circumstances" under 8 U.S.C. § 1158(a)(2)(D) that would excuse his untimely application.

8 C.F.R. § 1208.4(a)(5)(iv) enumerates "[maintenance] of . . . lawful immigrant or nonimmigrant status" as a possible "extraordinary circumstance." Singh had maintained his lawful nonimmigrant status until August 24, 2000, but the BIA concluded the extraordinary-circumstances exception did not apply for two reasons. First, according to the BIA, Singh's

---

[4]8 U.S.C. § 1158(a)(2)(D) reads:

An application for asylum of an alien may be considered, notwithstanding [the one-year deadline] if the alien demonstrates to the satisfaction of the Attorney General either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application within the [one-year period].

lawful nonimmigrant status "was not directly related to the filing of his application for asylum" because "it was the arrest of his wife that triggered his application and not because he was in lawful nonimmigrant status." Second, the BIA concluded that Singh unreasonably delayed his asylum application by filing it seven months after his first visa extension expired and three months after his second expired.

Singh timely petitioned us to review both of the BIA's decisions.

## III

We have jurisdiction to review Singh's petition under 8 U.S.C. § 1252. We may review the agency's application of the changed or extraordinary circumstances exception to undisputed facts. *Vahora v. Holder*, 641 F.3d 1038, 1042 (9th Cir. 2011); *Viridiana v. Holder*, 630 F.3d 942, 946 (9th Cir. 2011); *Taslimi v. Holder*, 590 F.3d 981, 984 (9th Cir. 2010); *Husyev v. Mukasey*, 528 F.3d 1172, 1181 (9th Cir. 2008); *Ramadan v. Gonzales*, 479 F.3d 646 (9th Cir. 2007) (per curiam). As evident below, the relevant facts are undisputed, so we have jurisdiction.

We review the agency's legal determinations de novo and its factual findings for substantial evidence. *Lopez-Birrueta v. Holder*, 633 F.3d 1211, 1214 (9th Cir. 2011). Under the substantial evidence standard, we will uphold the agency's decision "if the decision is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Tampubolon v. Holder*, 610 F.3d 1056, 1059 (9th Cir. 2010) (citations and internal quotation marks omitted). We will reverse the agency when "the evidence in the record compels a reasonable factfinder to conclude that the [agency's] decision is incorrect." *Id.* (citations and internal quotation marks omitted).

IV

**[1]** An applicant must ordinarily file an asylum application within one year after arriving in the United States. 8 U.S.C. § 1158(a)(2)(B). However, the Government may still consider a late application if the applicant establishes (1) changed circumstances that materially affect the applicant's eligibility for asylum or (2) extraordinary circumstances directly related to the delay in filing an application. *Id.* at § 1158(a)(2)(D); 8 C.F.R. § 1208.4(a)(4)(i), (5). Here, the agency applied incorrect legal standards to both of these inquiries. And it erroneously concluded that Singh failed to file his asylum application within a reasonable period of time after his lawful nonimmigrant status expired. We remand this matter to the BIA so that it may apply the correct legal standards in the first instance. *Ornelas-Chavez v. Gonzales*, 458 F.3d 1052, 1058 (9th Cir. 2006) ("But where the BIA applies the wrong legal standard to an applicant's claim, the appropriate relief from this court is remand for reconsideration under the correct standard, not independent review of the evidence.")

A

**[2]** " '[C]hanged circumstances' in [8 U.S.C. § 1158(a)(2)(D)] shall refer to circumstances materially affecting the applicant's eligibility for asylum." 8 C.F.R. § 1208.4(a)(4)(i); *see also Ramadan*, 479 F.3d 657-58. Once an applicant has demonstrated changed circumstances, he must show that the application was filed "within a reasonable period given those 'changed circumstances.' " 8 C.F.R. § 1208.4(a)(4)(ii).

Here, the IJ erred in two respects when he concluded that Singh had not demonstrated changed circumstances.[5]

---

[5]As to this issue, we review the IJ's decision because the BIA adopted it without opinion, citing *In re Burbano*, 20 I. & N. Dec. 872. *See Tamang v. Holder*, 598 F.3d 1083, 1088 (9th Cir. 2010).

First, the IJ applied the wrong legal standard. The IJ remarked: "The law requires the respondent to present evidence that is clear and convincing that there exists a changed circumstance." The IJ then focused solely on the purported settlement negotiations (ignoring the arrest of Singh's wife) and concluded the evidence surrounding the settlement was not "clear and convincing." Specifically, the IJ commented:

> It is unclear what that settlement might be because the respondent never testified as to the details of what he [thought his] family hoped to accomplish to make it safe for him to return to his homeland, to make it safe for him to live in his country in peace.

**[3]** Changed circumstances, though, are not evaluated under a "clear and convincing" standard.**[6]** While an applicant must show "by clear and convincing evidence that the application has been filed within 1 year after the date of the alien's arrival in the United States," 8 U.S.C. § 1158(a)(2)(B), the applicant need only provide evidence "[t]o the satisfaction of . . . the immigration judge . . . that he or she qualifies for an exception to the 1-year deadline," 8 C.F.R. § 1208.4(a)(2)(i)(B). *See also Husyev*, 528 F.3d at 1180. Thus, the IJ erred by holding Singh to a "clear and convincing" standard.

**[4]** Second, the IJ failed entirely to analyze whether the arrest of Singh's wife was a changed circumstance. Instead, the IJ based his analysis solely on the alleged settlement negotiations. The arrest, though, might very well be a changed circumstance. Taking Singh's testimony as true, his wife's arrest

---

**[6]**At any rate, the details of the settlement negotiations were sufficiently clear. Singh testified that his family hoped to arrange a compromise or settlement with the police by paying them money in return for their assurance that they would not harm or harass Singh if he returned. The efficacy of this plan is a separate issue, but the details are sufficiently clear to explain why Singh delayed his application for asylum.

prompted his late application.[7] By the Government's own admission, the arrest was "further evidence" of the persecution that Singh suffered in India. Evidence of the arrest might "[make Singh's] application much stronger." *Fakhry v. Mukasey*, 524 F.3d 1057, 1063-64 (9th Cir. 2008). For instance, since Singh would enjoy the presumption of a well-founded fear of persecution if his application is accepted,[8] his wife's arrest might make it more difficult for the Government to rebut that presumption.[9] *See* 8 C.F.R. § 1208.13(b)(1). Admittedly, since Singh's wife did not testify as to her alleged assault and rape during the arrest, the IJ cannot be faulted for failing to analyze those specific facts.[10] The IJ erred by failing entirely to analyze whether the arrest was a changed circumstance.

The Government argues that the relevant circumstances—e.g., the arrest of Singh's wife—are not changed circumstances because they merely provide "further support [to

---

[7]The IJ found Singh credible. As a result, Singh's testimony and portrayal of the facts must be accepted as true. *Kalubi v. Ashcroft*, 364 F.3d 1134, 1137 (9th Cir. 2004). At a minimum, the IJ was required to accept as true Singh's testimony that his wife was arrested during the time she and his family were attempting to negotiate a settlement or compromise for his return.

[8]The IJ concluded that Singh had suffered past persecution. "If past persecution is established, a rebuttable presumption of a well-founded fear arises, 8 C.F.R. § 208.13(b)(1), and the burden shifts to the government to demonstrate that there has been a fundamental change in circumstances such that the applicant no longer has a well-founded fear." *Tawadrus v. Ashcroft*, 364 F.3d 1099, 1103 (9th Cir. 2004) (internal quotation marks omitted).

[9]The Government argues that Singh "provides no explanation as to why his wife's arrest is indicative of the fact that he is no longer able to reside safely in a different region of India." The Government's critique is inapposite. The Government—not Singh—bears the burden of showing that Singh can safely relocate to another part of the country. *Melkonian v. Ashcroft*, 320 F.3d 1061, 1070 (9th Cir. 2003).

[10]Singh's wife's statement is in the record, but the record does not describe the extent to which the IJ relied on it or considered it.

Singh's] reasons for fleeing his home country in the first place." We squarely rejected this argument in *Fakhry*, 524 F.3d 1057.

In *Fakhry*, we held that a petitioner might still qualify for the changed circumstances exception even if the relevant circumstances do not create a new basis of persecution but simply provide further evidence of the type of persecution already suffered. *Id.* at 1063-64. We posed the following example:

> Take, for example, the case of an alien who came to the United States wanting to apply for asylum and fearing persecution should she return, but felt that she would not qualify on the objective reasonableness grounds. Not wanting to file an application that would be denied, she did not file. After her second year in the United States, changed circumstances in her country of origin made her application much stronger, prompting her late application. Why should she be penalized for declining to clog the immigration courts with a meritless application? The statute's description of "changed circumstances which materially affect the applicant's eligibility for asylum" reasonably includes this alien's situation.

*Id.* In short, changed circumstances may include events "in [an applicant's] country of origin [that make] her application much stronger, prompting her late application." *Id.*

**[5]** Here, the Government concedes that the relevant circumstances "further support [Singh's] reasons for fleeing his home country in the first place." Singh testified that he waited more than a year to apply for asylum because he thought conditions would improve so that he could return to India. In particular, he hoped his family could reach a "compromise" or "settlement" with the police that would allow him to return without the threat of being beaten or arrested. After Singh's

wife was arrested, he decided to apply for asylum because "if they can arrest her then they will kill me . . . ." Thus, just as the Government argues, the arrest is "further evidence" and provides "further support" to Singh's eligibility for asylum. This evidence may establish changed circumstances under *Fakhry*.

**[6]** Because the IJ applied the wrong legal standard, we remand to the BIA so that it can apply the correct standard in the first instance. *Ornelas-Chavez*, 458 F.3d at 1058. In applying the correct standard, the BIA should consider whether the arrest of Singh's wife constituted a changed circumstance.

## B

**[7]** The Government may also consider an untimely asylum application if the application was delayed on account of extraordinary circumstances. 8 U.S.C. § 1158(a)(2)(D). "The term 'extraordinary circumstances' . . . refer[s] to events or factors directly related to the failure to meet the 1-year deadline." 8 C.F.R. § 1208.4(a)(5). The applicant bears the burden of showing those circumstances (1) "were directly related to the alien's failure to file the application within the 1-year period" and (2) "the delay was reasonable under the circumstances." *Id.*

8 C.F.R. § 1208.4(a)(5)(i)-(vi) enumerates six possible circumstances that might constitute extraordinary circumstances. Relevant here, one of those is: "The applicant maintained . . . lawful immigrant or nonimmigrant status . . . until a reasonable period before the filing of the asylum application . . . ." 8 C.F.R. § 1208.4(5)(iv); *see also Dhital v. Mukasey*, 532 F.3d 1044, 1049-50 (9th Cir. 2008); *Husyev*, 528 F.3d at 1181.

Here, the BIA concluded the extraordinary-circumstances exception did not apply to Singh's application for two rea-

sons. First, it concluded Singh's lawful nonimmigrant status was not "directly related to the filing of his application for asylum" because "it was the arrest of his wife that triggered his application and not because he was in lawful nonimmigrant status." Second, it concluded that Singh unreasonably delayed his application by filing it seven months after the expiration of his first extension and three months after his second extension.

The BIA erred in its analysis. First, the BIA incorrectly applied the "directly related" requirement to Singh's circumstances. Second, the purported delay fell within the presumptively reasonable time period.

1

The BIA concluded Singh's late application should not be excused simply because the regulations enumerate maintenance of lawful nonimmigrant status as a possible extraordinary circumstance. Instead, the BIA reasoned, Singh also had to show that maintenance of nonimmigrant status was "directly related to the filing of his application for asylum." Indeed, applicants must satisfy the "directly related" requirement, even when the relevant circumstances are enumerated in the regulation. *Wakkary v. Holder*, 558 F.3d 1049, 1057 (9th Cir. 2009);[11] *In re Y—C—*, 23 I. & N. Dec. 286, 288 (BIA

---

[11]It is worth noting that in *Wakkary*, when we examined 8 C.F.R. § 208.4(a)(5)(iv)—the subsection discussing maintenance of lawful immigrant or nonimmigrant status—we never questioned whether the applicant's maintenance of that status was directly related to the reason his untimely application was delayed. *Wakkary*, 558 F.3d at 1056-58. Instead, we apparently assumed that it was. *Id.*; *see also Ramadan*, 479 F.3d at 650 (observing that 8 C.F.R. § 208.4(a)(5)(i)-(iv) "lists examples of 'extraordinary circumstances . . . directly related to the failure to meet the one-year deadline' "). As in *Husyev*, after we determined the petitioner had maintained lawful status, we went on to analyze the reasonableness of the delay in filing the application without determining whether the delay was directly related to the petitioner's lawful status. *Wakkary*, 558 F.3d at 1058-59; *Husyev*, 528 F.3d at 1182.

2002) (en banc). However, the BIA misapplied this requirement to Singh's circumstances.

The BIA reasoned that Singh's lawful nonimmigrant status was not "directly related to the filing of his application for asylum" because "it was the arrest of [Singh's] wife that triggered his application and not because he was in lawful nonimmigrant status." The BIA misinterpreted the directly-related requirement.

**[8]** Under 8 C.F.R. § 1208.4(a)(5), an applicant has the burden of showing that the relevant circumstances "were directly related to the [applicant's] failure to file the application within the 1-year period . . . ." The BIA held Singh to a different standard. It required him to show that the relevant circumstances were "directly related to the filing of his application for asylum." This was error. The applicant must show that the relevant circumstances were directly related to the reason the application was *delayed*, not the reason the application was eventually *filed*.

Aside from conflicting with the plain language of the regulation, the problem with the BIA's standard is that it is virtually impossible to meet. Consider, for example, the circumstances enumerated at 8 C.F.R. § 1208.4(a)(5)(i)-(vi):

　　(i) serious illness or mental physical disability,

　　(ii) legal disability,

　　(iii) ineffective assistance of counsel,

　　(iv) maintenance of lawful immigrant or nonimmigrant status,

　　(v) an improper asylum application, and

(vi) the death or serious illness of the applicant's legal representative or a member of the applicant's immediate family.

Certainly, these circumstances might delay an application. However, they would likely never "trigger" the filing of an application because they do not create a basis for asylum eligibility (unlike, for example, evidence of increased or renewed persecution). The BIA's standard, then, misses the mark because these and other extraordinary circumstances are not reasons for filing an asylum application—they are reasons for delaying an application. Indeed, if the BIA's interpretation in this case were applied, a petitioner could never qualify for the exception.

[9] The facts here illustrate precisely the BIA's flaw. The BIA concluded Singh did not meet the directly-related requirement "because it was the arrest of his wife that triggered his application and not because he was in lawful nonimmigrant status." Indeed, Singh testified that his wife's arrest prompted his application. But this is not the relevant inquiry. The relevant inquiry is why Singh delayed his application.

[10] Because the BIA erred in its analysis, we must remand the issue so that the BIA can apply the correct standard to this inquiry.[12] *Ornelas-Chavez*, 458 F.3d at 1058.

---

[12]Singh testified that he delayed his application because he twice extended his lawful nonimmigrant status, hoping his family might negotiate a "settlement" or "compromise" for his safe return to India. He testified that, following his wife's arrest, he no longer believed that he could safely return, and he filed his asylum application in short order. On remand, the BIA should consider whether Singh's nonimmigrant status was directly related to the reason his asylum application was delayed, given that the status allowed him to remain temporarily in the United States while he waited for his family to negotiate a "settlement" or "compromise" for his safe return to India.

2

The BIA also concluded that Singh unreasonably delayed his asylum application because he filed it seven months after the first extension of his nonimmigrant visa had expired and three months after his second extension had expired. However, the BIA's finding is not supported by substantial evidence.

**[11]** We have held that a filing delay of less than six months after an applicant's nonimmigrant status has expired is presumptively reasonable. *Husyev*, 528 F.3d at 1181; *Wakkary*, 558 F.3d at 1057-58. We based this holding on the preamble to the regulation that enumerates maintenance of nonimmigrant status as a possible extraordinary circumstance:

> Generally, the Department expects an asylum-seeker to apply as soon as possible after expiration of his or her valid status, and failure to do so will result in rejection of the asylum application. *Clearly, waiting six months or longer after expiration or termination of status would not be considered reasonable.* Shorter periods of time would be considered on a case-by-case basis, with the decision-maker taking into account the totality of the circumstances.

65 Fed. Reg. 76121-01 at 76123-24 (emphasis added). We observed that by communicating the six-month period, "[T]he agency has taken pains to articulate the 'reasonable period' standard that applies to petitioners whose temporary nonimmigrant status has expired." *Husyev*, 528 F.3d at 1181. This standard is a "meaningful standard." *Id.* And, "In the absence of any special considerations, the six months period suggested in the preamble to the regulations is not an unreasonable presumptive deadline." *Id.* at 1182; *accord Wakkary*, 558 F.3d at 1057-58; *see also Viridiana*, 630 F.3d at 951 (concluding a three-month delay was reasonable in light of the circumstances); *cf. Dhital*, 532 F.3d at 1049-50 (holding that a two-

year delay in filing an asylum application—without any explanation for the delay— was unreasonable); *Husyev*, 528 F.3d 1081-82 (holding that a 364-day delay—again, without any explanation—was unreasonable).

[12] Singh's last day of lawful nonimmigrant status was August 24, 2000. He applied for asylum less than three months later.[13] This time period is presumptively reasonable. *Husyev*, 528 F.3d at 1182; *Wakkary*, 558 F.3d at 1057-58. This is particularly true given that the Government waited nearly a year to address Singh's first extension request and nearly six months to address his second.

[13] We remand this matter to the BIA so that it may apply the correct standard when determining whether Singh satisfies the extraordinary-circumstances exception.

V

The agency applied incorrect legal standards when it determined that Singh had not established changed or extraordinary circumstances, excusing his untimely application. Moreover, its determination that Singh failed to file his application within a reasonable period of time after his lawful nonimmigrant status expired is not supported by substantial evidence. Accordingly, we grant Singh's petition and remand this matter to the BIA so that it can apply the correct legal standards in the first instance. *Ornelas-Chaez*, 458 F.3d at

---

[13]The fact that Singh's first extension expired seven months prior to when he filed his application for asylum, while perhaps relevant, is of little significance. The government granted the extension effective retroactively, curing the technical expiration. Given his second extension, Singh was a lawful nonimmigrant as of August 24, 2000, and he applied for asylum less than three months later. *See Wakkary*, 558 F.3d at 1055, 1058 (considering only the most recent of two expired visas when determining whether the petitioner's delay in filing his asylum application was a reasonable period of time).

1058. We need not and do not reach any other issues urged by the parties.

**PETITION GRANTED; REMANDED**

---

RAWLINSON, Circuit Judge, concurring in the result:

I agree that this case should be remanded for application of the correct standard to the determination of whether the petitioner has made a sufficient showing of extraordinary circumstances to excuse the untimely filing of his asylum application. However, I expressly disavow the majority's holding that the seven-month lapse between the expiration of Singh's visa extension and the filing of his asylum application is "of little significance . . . ." *Majority Opinion*, p. 17073 n.13. Indeed, the governing regulation is to the contrary. *See* 65 Fed. Reg. 76121-01 at 76124 ("*Clearly*, waiting *six months or longer after expiration . . . of status* would *not* be considered reasonable . . .) (emphasis added). The majority's reliance on *Wakkary v. Holder*, 558 F.3d 1049, 1055, 1058 (9th Cir. 2009), *see Majority Opinion*, p. 17073 n.13, is unavailing. In that case, we expressly noted that "Wakkary submitted his asylum application . . . six months and some days *after his status expired . . .*" *Wakkary*, 558 F.3d at 1057 (emphasis added). By analogy, Singh submitted his application seven months after his status expired. A determination of unreasonableness in that circumstance is consistent with our precedent. *See Husyev v. Mukasey*, 528 F.3d 1172, 1182 (9th Cir. 2008) (establishing *six* months as a presumptive deadline).

In sum, I agree that this case should be remanded to the agency for application of the correct standard to the determination of whether extraordinary circumstances exist. For that reason only, I concur in the result.