**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| OSAMA JAMAL HAROUN AL RAMAHI; NISREEN SAMI AL SHARIF, *Petitioners*, <br><br> v. <br><br> ERIC H. HOLDER, JR., Attorney General, *Respondent*. | No. 12-70628 <br><br> Agency Nos. A088-735-008 A088-735-009 <br><br><br> OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
June 6, 2013—Seattle, Washington

Filed August 6, 2013

Before: Ronald Lee Gilman,[*] M. Margaret McKeown,
and Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Ikuta

---

[*] The Honorable Ronald Lee Gilman, Senior Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

## SUMMARY**

### Immigration

The panel denied a petition for review of the Board of Immigration Appeals' denial of asylum on the basis that petitioners failed to file their asylum applications within the one-year deadline or within a reasonable period after their claimed extraordinary circumstances.

The panel held that the evidence did not compel the conclusion that petitioners' over fifteen-month delay in seeking asylum after changed or extraordinary circumstances was reasonable where they alleged that the delay was due to various barriers after petitioners' lawful status elapsed, including ineffective assistance of counsel, their inability to retain attorneys, and their inability to file an application after issuance of the Notice to Appear.

### COUNSEL

Vicky Dobrin and Hilary Han (argued), Dobrin & Han, PC, Seattle, Washington, for Petitioners.

Stuart F. Delery, Acting Assistant Attorney General, Ernesto H. Molina, Jr., Assistant Director, Andrew N. O'Malley and Jeffery R. Leist (argued), Trial Attorneys, Office of Immigration Litigation, United States Department of Justice, Civil Division, Washington, D.C., for Respondent.

---

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**OPINION**

IKUTA, Circuit Judge:

Osama Al Ramahi and Nisreen Al Sharif petition for review of the decision by the Board of Immigration Appeals (BIA) that extraordinary circumstances do not excuse their untimely applications for asylum. We deny the petition because substantial evidence supports the BIA's conclusion that, even assuming the petitioners could demonstrate extraordinary circumstances, they did not file their applications within a "reasonable period given those circumstances." 8 C.F.R. § 1208.4(a)(5).

I

We begin by examining the statutory framework that governs the timeliness of asylum applications. To qualify for asylum, an alien must demonstrate by clear and convincing evidence that the alien's application for asylum was "filed within 1 year after the date of the alien's arrival in the United States." 8 U.S.C. § 1158(a)(2)(B); *see Ramadan v. Gonzales*, 479 F.3d 646, 649 (9th Cir. 2007) (per curiam). There is a statutory exception to this one-year filing deadline: an alien may file a late application by demonstrating to the satisfaction of the Attorney General either (1) "the existence of changed circumstances which materially affect the applicant's eligibility for asylum" or (2) "extraordinary circumstances relating to the delay in filing." 8 U.S.C. § 1158(a)(2)(D); *see Ramadan*, 479 F.3d at 649–50. The applicable regulations provide a non-exhaustive list of qualifying "extraordinary circumstances," 8 C.F.R. § 1208.4(a)(5), which includes "maintain[ing] . . . lawful immigrant or nonimmigrant status . . . until a reasonable

period before the filing of the asylum application." 8 C.F.R. § 1208.4(a)(5)(iv); *see also Wakkary v. Holder*, 558 F.3d 1049, 1056 (9th Cir. 2009).

If an alien successfully demonstrates the existence of extraordinary circumstances, the alien must then demonstrate that the asylum application was filed within a "reasonable period given those circumstances." 8 C.F.R. § 1208.4(a)(5); *see Singh v. Holder*, 656 F.3d 1047, 1052 (9th Cir. 2011). Therefore, an alien who claims the extraordinary circumstance of maintenance of lawful status, *see* § 1208.4(a)(5)(iv), must show that "his delay in filing was 'reasonable under the circumstances,'" *Wakkary*, 558 F.3d at 1057, as "determined on the basis of all the factual circumstances of the case." *Husyev v. Mukasey*, 528 F.3d 1172, 1182 (9th Cir. 2008); *see also Wakkary*, 558 F.3d at 1058.

In evaluating the reasonableness of a delay in filing, we have looked for guidance to the Preamble to the final regulations governing asylum procedures. *Husyev*, 528 F.3d at 1181–82 & n.4. The Preamble states:

> Generally, the Department expects an asylum-seeker to apply as soon as possible after expiration of his or her valid status, and failure to do so will result in rejection of the asylum application. *Clearly, waiting six months or longer after expiration or termination of status would not be considered reasonable.* Shorter periods of time would be considered on a case-by-case basis, with the decision-maker taking into account the totality of the circumstances.

Asylum Procedures, 65 Fed. Reg. 76121 at 76123–24 (Dec. 6, 2000) (emphasis added). In other words, it is reasonable for an applicant "to apply as soon as possible after expiration" of the alien's lawful status, and unreasonable to wait "six months or longer after expiration or termination of status." *Id.* We have interpreted the Preamble to mean that a reasonable period of delay "ordinarily would not exceed six months," *Husyev*, 528 F.3d at 1182, but that "a filing delay of less than six months after an applicant's nonimmigrant status has expired is presumptively reasonable." *Singh*, 656 F.3d at 1056. The presumptive six-month deadline does not "foreclose other reasonable periods, and exceptions thereto, that may be set out by the agency, nor [does it] preclude individualized determinations of reasonableness of delay." *Wakkary*, 558 F.3d at 1058–59 (quoting *Husyev*, 528 F.3d at 1182 n.4).

Therefore, in evaluating whether substantial evidence supports the BIA's determination regarding the reasonableness of an alien's delay in filing an asylum application, we consider all the factual circumstances of the case in light of the guidance provided by the Preamble. *See Wakkary*, 558 F.3d at 1058.

## II

We turn now to the facts of this case. Al Ramahi and Al Sharif, a married couple from Jordan, testified that they came to the United States to escape persecution by Al Sharif's brothers. According to Al Sharif's testimony, her brothers opposed her marriage to Al Ramahi because he was an outsider, and as a result, the brothers refused to give Al Sharif her share of the inheritance from their father. When Al Sharif continued demanding her due, her brothers beat her and held

her prisoner in the family home. Al Sharif's brothers eventually allowed her to travel to the United States, but only after she divorced Al Ramahi.

Al Sharif entered the United States on a visa on May 30, 2007, with authorization to stay until November 29, 2007. Al Ramahi soon followed, entering the United States on a visa on July 1, 2007, with authorization to stay until December 31, 2007. The petitioners had until May 30 and July 1, 2008 to file their asylum application, *see* 8 U.S.C. § 1158(a)(2)(B), but did not file until April 29, 2009, nearly two years after entering the United States.

The following relevant events occurred after the petitioners' entry into the country. Once they were reunited in the United States, Al Sharif and Al Ramahi remarried. In September 2007, the petitioners' son was born. In October or November 2007, Al Sharif's brothers discovered that Al Sharif had reunited with Al Ramahi in the United States. Shortly afterwards, the brothers visited the home of Al Ramahi's family in Jordan and threatened to kill both Al Sharif and Al Ramahi. Al Ramahi learned about this incident from his brother. In December 2007, Al Ramahi met with an attorney, Bart Klein, to get information about their options for remaining in the country. Al Ramahi did not tell Klein about the persecution he and his wife had experienced, and Klein informed Al Ramahi that the couple was not eligible for asylum.

Al Ramahi continued to seek legal help. In January and February 2008, he called two phone numbers on a list of pro bono immigration attorneys. He called the first number twice and left a message each time, but no one returned his calls.

No one answered when he called the second number, and he did not try again.

On July 2, 2008, a few weeks after Al Sharif's one-year deadline for filing for asylum had passed and a day after Al Ramahi's deadline had passed, Al Ramahi met with a second lawyer, Stephanie Thorpe, and told her about their fear of persecution in Jordan. Thorpe advised Al Ramahi that asylum applications generally had to be filed within one year of entering the United States, but suggested that Al Ramahi could be eligible to file an untimely asylum application based on changed circumstances. She advised him to file as soon as possible. After speaking to Thorpe, Al Ramahi asked his parents for money to retain Thorpe's law firm, but his parents could not help him financially.

Approximately one week later, on July 8, 2008, immigration officers visited the couple's home, issued the couple Notices to Appear in immigration court, and detained Al Ramahi for six hours. After Al Ramahi's release, a friend loaned him money to hire Thorpe's firm, which began representing the couple. A few months later, in September 2008, the government filed the Notices to Appear with the immigration court, thus commencing proceedings. *See Samayoa-Martinez v. Holder*, 558 F.3d 897, 901 (9th Cir. 2009).

In January 2009, Al Ramahi and Al Sharif filed a motion to advance their master calendar hearing so that they could file their asylum applications. The immigration judge (IJ) granted the motion, and the couple filed their applications for asylum at the April 20, 2009 hearing.

The IJ ultimately rejected the petitioners' asylum applications as untimely. Although the petitioners argued that their late filing should be excused due to changed and extraordinary circumstances, the IJ noted that the petitioners had submitted their applications "well beyond the one-year deadline set by the statute" and concluded that the petitioners had not demonstrated either changed or extraordinary circumstances. Nevertheless, the IJ determined that both petitioners qualified for withholding of removal and granted that relief.[1]

On appeal to the BIA, the petitioners pressed their argument that changed or extraordinary circumstances excused their untimeliness in filing their asylum applications. According to the petitioners, the threats received from Al Sharif's brothers in November 2007 constituted materially changed circumstances, and the lapse of their lawful status at the end of 2007 constituted extraordinary circumstances. Further, the petitioners argued that their delay in filing for asylum was reasonable given the deficient advice of Bart Klein, the responsibility of caring for a newborn baby, the difficulty in seeking legal advice, and the fact that the government served them with notices to appear in July 2008.

The BIA affirmed in a reasoned opinion. It assumed that the petitioners had experienced changed or extraordinary circumstances at the end of 2007 when their lawful status

---

[1] Because the IJ granted withholding of removal to Al Ramahi and Al Sharif, the government cannot remove them to Jordan so long as they remain eligible for that form of relief. 8 U.S.C. § 1231(b)(3)(A) (2006); *Wakkary*, 558 F.3d at 1053. Nevertheless, Al Ramahi and Al Sharif continue to seek asylum, which offers additional benefits. *See Khunaverdiants v. Mukasey*, 548 F.3d 760, 767 (9th Cir. 2008).

lapsed. Nevertheless, the BIA concluded that their asylum applications were untimely because the petitioners failed to meet their burden of showing that their applications were filed within a reasonable period. The BIA held that because petitioners had not met the procedural requirements for filing an ineffective assistance of counsel claim, *see Matter of Lozada*, 19 I & N Dec. 637 (BIA 1988), the IJ had no basis for assessing their claim, and thus they failed to establish that Klein's deficient performance had caused their delay. The BIA also rejected petitioners' argument that their difficulties in obtaining representation, financial problems, and being served with Notices to Appear, made their delay reasonable. Noting that exceptions to the one-year filing deadline were not meant to be granted after a year of delay except in rare cases, the BIA concluded that the petitioners' two-year delay was not reasonable because it "was essentially one which they chose." Al Ramahi and Al Sharif timely petitioned for review of this decision.

III

As a threshold matter, we must determine whether we have jurisdiction to consider Al Ramahi and Al Sharif's petition for review. The Immigration and Nationality Act provides that "[n]o court shall have jurisdiction to review any determination of the Attorney General" made pursuant to § 1158(a)(2), which includes the applicability of the "extraordinary circumstances" exception to the one-year filing deadline. 8 U.S.C. § 1158(a)(3); § 1158(a)(2)(D). On its face, this jurisdiction-stripping language would bar us from reviewing the BIA's determination that the extraordinary circumstances exception is inapplicable in this case. But we have concluded that we have authority to review such determinations under 8 U.S.C. § 1252(a)(2)(D),

which preserves our jurisdiction over "constitutional claims or questions of law raised upon a petition for review." *Ramadan*, 479 F.3d at 650. We have held that "questions of law" encompass "questions involving the application of statutes or regulations to undisputed facts," *id.*, and therefore, that we may review the BIA's application of the changed or extraordinary circumstances exception when the historical facts are undisputed, *see id.*[2]

We review the BIA's determination for substantial evidence and will uphold its decision if it "is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Singh*, 656 F.3d at 1051, 1056

---

[2] We are alone in interpreting the REAL ID Act to allow for such broad review in this area. Nearly all our sister circuits have rejected *Ramadan*'s view that the REAL ID Act grants jurisdiction to review the BIA's application of the changed or extraordinary circumstances exception. They have concluded that the determination entails an unreviewable exercise of discretion or that "questions of law" does not include mixed questions of law and fact. *See Lumataw v. Holder*, 582 F.3d 78, 86 (1st Cir. 2009); *Sukwanputra v. Gonzales*, 434 F.3d 627, 635 (3d Cir. 2006); *Gomis v. Holder*, 571 F.3d 353, 358–59 (4th Cir. 2009); *Zhu v. Gonzales*, 493 F.3d 588, 596 & n.31 (5th Cir. 2007); *Almuhtaseb v. Gonzales*, 453 F.3d 743, 747–48 (6th Cir. 2006); *Viracacha v. Mukasey*, 518 F.3d 511, 515–16 (7th Cir. 2008); *Ignatova v. Gonzales*, 430 F.3d 1209, 1214 (8th Cir. 2005); *Ferry v. Gonzales*, 457 F.3d 1117, 1130 (10th Cir. 2006); *Chacon-Botero v. United States Att'y Gen.*, 427 F.3d 954, 956–57 (11th Cir. 2005) (per curiam); *see also Lin v. Holder*, 610 F.3d 1093, 1098 (9th Cir. 2010) (O'Scannlain, J., specially concurring) (collecting cases). While the Second Circuit has declined to "determine the precise outer limits of the term 'questions of law' under the REAL ID Act," *Chen v. U.S. Dep't of Justice*, 471 F.3d 315, 328 (2d Cir. 2006), it appears to have read that term more narrowly than we have. *See id.* at 328–29 & n.7; *Liu v. I.N.S.*, 508 F.3d 716, 721 & n.3 (2d Cir. 2007). But in the absence of any intervening higher authority we are bound by *Ramadan*. *See Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc).

(internal quotation marks omitted).  We may reverse the BIA only "when the evidence in the record compels a reasonable factfinder to conclude that the [BIA's] decision is incorrect." *Id.* at 1051–52 (internal quotation marks omitted).

We now turn to the question whether the BIA's determination that Al Ramahi and Al Sharif failed to show they filed their asylum applications within a reasonable period of time was supported by substantial evidence. Beginning with the guidance provided by the Preamble, we note that Al Ramahi and Al Sharif filed their asylum applications more than fifteen months after the lapse of their lawful status in November and December 2007, far into the zone that "would not be considered reasonable" per the Preamble, 65 Fed. Reg. at 76123-24, and more than twice the presumptive six-month deadline we have previously recognized.  *See Singh*, 656 F.3d at 1056.  The guidance provided by the Preamble, therefore, supports the BIA's determination.

We next consider the petitioners' arguments about other factual circumstances relating to the reasonableness of their delay.  *Wakkary*, 558 F.3d at 1058.  According to the petitioners, their delay in filing asylum applications was reasonable because of various barriers they encountered after their lawful status elapsed, including deficient advice from Klein, their inability to retain other attorneys, and (once they did retain legal counsel) their inability to file asylum applications due to having been served Notices to Appear.

We disagree that these circumstances compel the conclusion that the petitioners' delay in filing was reasonable. First, in the absence of the evidentiary support required by *Lozada*, the BIA could reasonably conclude that it lacked a

basis from which to analyze petitioners' claim that Klein's advice was deficient. *See Tamang v. Holder*, 598 F.3d 1083, 1090–91 (9th Cir. 2010). Compliance with *Lozada* ensures that the BIA has an objective basis "for assessing the substantial number of claims of ineffective assistance of counsel that come before [it]." *Reyes v. Ashcroft*, 358 F.3d 592, 596 (9th Cir. 2004) (quoting *Lozada*, 19 I & N Dec. at 639); *see* 8 C.F.R. § 1208.4(a)(5)(iii) (codifying *Lozada*'s requirements).**[3]** Thus, the BIA did not err in holding that the petitioners failed to establish that Klein's advice was deficient.

Petitioners argue that even if they failed to establish ineffective assistance of counsel, the BIA erred in not considering Klein's advice as part of "all the factual circumstances of the case" that made their delay in filing reasonable. *Husyev*, 528 F.3d at 1182. We disagree. The

---

**[3]** 8 C.F.R. § 1208.4(a)(5)(iii) establishes that ineffective assistance of counsel can excuse an untimely asylum application so long as:

> (A) The alien files an affidavit setting forth in detail the agreement that was entered into with counsel with respect to the actions to be taken and what representations counsel did or did not make to the respondent in this regard;
>
> (B) The counsel whose integrity or competence is being impugned has been informed of the allegations leveled against him or her and given an opportunity to respond; and
>
> (C) The alien indicates whether a complaint has been filed with appropriate disciplinary authorities with respect to any violation of counsel's ethical or legal responsibilities, and if not, why not[.]

BIA considered the effect of Klein's advice, along with other efforts by the petitioners to obtain legal representation and file their asylum applications, but concluded that all the factual circumstances were insufficient to carry the petitioners' burden.

The BIA's conclusion is supported by substantial evidence. Al Ramahi's attempt to contact two lawyers within a month after his discussions with Klein demonstrates that Klein's advice did not discourage the petitioners from seeking further legal advice or a second opinion. Moreover, even after an attorney (Thorpe) informed them of the one-year deadline for asylum applications and urged them to file as soon as possible, they failed to do so. Although the petitioners claim they lacked the funds to hire Thorpe, the government correctly points out that the petitioners could have filed asylum applications themselves, sought pro bono counsel or other assistance, or contacted immigration authorities. Moreover, the petitioners were ultimately able to obtain the necessary funds to retain Thorpe's firm.

Finally, the petitioners contend that the BIA failed to give sufficient weight to the effect of the service of Notices to Appear on their ability to file their asylum applications. Again, we disagree. The petitioners could have filed affirmative asylum applications with the Department of Homeland Security's Asylum Office even after the government served them with Notices to Appear on July 8, 2008. Although the immigration court would have ultimately assumed jurisdiction over these applications, *see* 8 C.F.R. § 1208.2(b), the petitioners concede that nothing prevented them from filing such applications. Instead, the petitioners waited until January 2009 to take any concrete steps towards filing their applications.

In sum, considering all the factual circumstances of this case in light of the guidance provided by the Preamble, we are not compelled to reverse the BIA's conclusion that the petitioners did not file their asylum applications within a reasonable period after the lapse of their lawful status in the United States.  *See INS v. Elias-Zacarias*, 502 U.S. 478, 481 & n.1 (1992) ("To reverse the BIA finding we must find that the evidence not only *supports* that conclusion, but *compels* it.").

**PETITION DENIED.**