NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

DEC 4 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

EPALLE AMOS GEORGES NSEKE,

Petitioner,

v.

MERRICK B. GARLAND, Attorney
General,

Respondent.

No. 19-72599

Agency No. A087-217-130

MEMORANDUM[*]

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted November 13, 2023
Pasadena, California

Before: PARKER,[**] BYBEE, and LEE, Circuit Judges.

Petitioner Epalle Amos Georges Nseke, a native and citizen of Cameroon,

petitions for review of the Board of Immigration Appeals' ("BIA's") order affirming

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]     The Honorable Barrington D. Parker, Jr., United States Circuit Judge for the
U.S. Court of Appeals for the Second Circuit, sitting by designation.

an immigration judge's ("IJ's") denial of his applications for asylum, withholding of removal, and Convention Against Torture ("CAT") protection. We have jurisdiction under 8 U.S.C. § 1252. Reviewing for substantial evidence, *see Manes v. Sessions*, 875 F.3d 1261, 1263–65 (9th Cir. 2017), we grant the petition in part, deny the petition in part, and remand.

1. Substantial evidence supports the BIA's assessment that Nseke's asylum application was untimely. An application for asylum filed more than one year after the noncitizen's arrival in the United States may be entertained only if there are "extraordinary circumstances relating to the delay in filing an application" or if there are "changed circumstances which materially affect the applicant's eligibility for asylum[.]" 8 U.S.C. § 1158(a)(2)(D). Either way, the noncitizen must file an asylum application within a reasonable period. 8 C.F.R. § 1208.4(a)(4)(ii), (5). A delay of six months is presumptively unreasonable, *see Al Ramahi v. Holder*, 725 F.3d 1133, 1135 (9th Cir. 2013), but the reasonableness inquiry must be made on a case-by-case basis, *see Wakkary v. Holder*, 558 F.3d 1049, 1058 (9th Cir. 2009).

The BIA and the parties assume that Nseke has presented extraordinary circumstances pertaining to his second visa petition and immediate-relative adjustment applications, which were denied most recently on May 16, 2013. Nseke filed his asylum application nearly three years later—on April 27, 2016—allegedly because he was waiting to find and obtain counsel. Substantial evidence supports

2

the BIA's conclusion that this three-year delay was unreasonable notwithstanding Nseke's explanation. We have previously recognized that the absence of counsel does not necessarily excuse a lengthy period of delay, especially because attorney representation is not necessary to file for asylum. *See Al Ramahi*, 725 F.3d at 1138–39.

Substantial evidence also supports the BIA's determination that Nseke has not established changed circumstances by presenting additional "evidence that police had been looking for him since 2008 and as recently as 2017." The information submitted by Nseke constitutes merely a continuation of circumstances, as Nseke had known since at least 2008 that police were searching for him. Such evidence does not have a material effect on Nseke's application for asylum. *See Vahora v. Holder*, 641 F.3d 1038, 1044 n.4 (9th Cir. 2011). Moreover, substantial evidence supports the BIA's conclusion that Boko Haram's terrorist acts against Christians did not establish changed circumstances. Those circumstances began in 2010, and violence peaked in 2014. Even assuming a material change in circumstances in 2014, the BIA appropriately concluded that it was unreasonable for Nseke to wait until 2016 to file for asylum.

2. Substantial evidence does not support the BIA's adverse credibility determination. Although the substantial evidence standard is highly deferential, the "mere omission of details is insufficient to uphold an adverse credibility finding,"

3

*Silva-Pereira v. Lynch*, 827 F.3d 1176, 1185 (9th Cir. 2016) (internal quotation marks and citation omitted), especially when evidence presented at an immigration hearing "was supplemental rather than contradictory," *Lai v. Holder*, 773 F.3d 966, 973 (9th Cir. 2014).

First, the BIA affirmed the IJ's assessment that Nseke had omitted from his declaration information "regarding being beaten twice in 1994 and 1995." But Nseke's declaration specifically mentions an incident in January 1994, and then notes that "[s]ince that time until [he] graduated" in 1995, "police would routinely take [him] into custody," and they were sometimes "physically abusive." When Nseke could not recall an exact date at the hearing, the IJ pressed him to give an approximation. Nseke's response—"around early '95"—was consistent with his declaration.

Second, the BIA noted "several omissions regarding other police arrests and visits with regard to his family." On questioning from the IJ, Nseke first suggested that the police had visited his family "countless" times. And when asked to specify further, Nseke said, "around ten times." Nseke also clarified that his brother was arrested twice. Nseke's testimony was consistent with that of his declaration, which explained that his brother "ha[d] been jailed and beaten twice" since he left and that his sister was arrested "countless times." And omissions of "incidents affecting only third parties" are generally "less probative of credibility" because "asylum claims

4

. . . are centered around events and circumstances that the applicants have experienced directly[.]" *Lai*, 773 F.3d at 973–74.

Third, the BIA agreed with the IJ that Nseke omitted from his declaration "that he was a member of a nonprofit organization that helped disabled individuals and orphans, and that he feared returning to Cameroon because the Boko Haram was targeting individuals who helped people." To begin, Nseke's declaration notes his fear of being targeted by Boko Haram on the basis of his Christian faith. Contrary to the government's position, Nseke's testimony about his nonprofit involvement was not a standalone basis for relief; Nseke never claimed that he was persecuted because he was the head of a nonprofit. Instead, that testimony supplemented his declaration by explaining why he would be targeted specifically by Boko Haram when Boko Haram had not previously targeted Nseke's other family members. His position with the nonprofit raised his profile in his community, exposing him to persecution by Boko Haram. These additional details are not inconsistent with Nseke's declaration; while they buttress Nseke's other evidence, his involvement in a nonprofit was hardly "crucial to establishing [his] . . . central claim." *Iman v. Barr*, 972 F.3d 1058, 1068 (9th Cir. 2020).

3. Nseke preserves for subsequent review his argument that the initial Notice to Appear ("NTA"), which lacked time and date information, was defective under *Pereira v. Sessions*, 138 S. Ct. 2105 (2018). At the panel stage, this argument is

foreclosed by *United States v. Bastide-Hernandez*, 39 F.4th 1187 (9th Cir. 2022) (en banc).

We therefore deny the petition as to Nseke's asylum and NTA claims. We grant the petition as to Nseke's withholding and CAT claims, and remand to the BIA. On remand, the BIA may consider either the merits of Nseke's remaining claims for relief or whether the IJ's adverse credibility determination is supported by other evidence in the record exclusive of those purported omissions and inconsistencies addressed here. *See Pal v. I.N.S.*, 204 F.3d 935, 939 (9th Cir. 2000). In light of our disposition, Nseke's motion for a stay of removal is denied as moot. Costs on appeal shall be assessed against the United States.

**Petition for review GRANTED in part and DENIED in part; REMANDED.**