**NOT FOR PUBLICATION**

**FILED**

**UNITED STATES COURT OF APPEALS**

DEC 8 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**FOR THE NINTH CIRCUIT**

KAREN MELKUMYAN,

Petitioner,

v.

PAMELA BONDI, Attorney General,

Respondent.

No. 25-1451

Agency No.
A213-463-046

MEMORANDUM[*]

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted December 4, 2025[**]
Pasadena, California

Before: CALLAHAN and KOH, Circuit Judges, and BARKER, District Judge.[***]

Karen Melkumyan ("Petitioner"), a native and citizen of Armenia, petitions

for review of the decision by the Board of Immigration Appeals ("BIA")

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]     The panel previously granted Respondent's unopposed motion to submit this case on the briefs and record without oral argument. *See* Dkt. 34; Fed. R. App. P. 34(a)(2).

[***]     The Honorable J. Campbell Barker, United States District Judge for the Eastern District of Texas, sitting by designation.

dismissing an appeal from an order of an Immigration Judge ("IJ") denying

Petitioner's application for asylum, humanitarian asylum, withholding of removal,

and protection under the Convention Against Torture ("CAT"). We have

jurisdiction pursuant to 8 U.S.C. § 1252. We deny the petition.

"Where the BIA issues its own decision but relies in part on the immigration

judge's reasoning, we review both decisions." *Tzompantzi-Salazar v. Garland*, 32

F.4th 696, 702 (9th Cir. 2022) (internal quotation marks and citation omitted). "We

review for substantial evidence factual findings underlying the BIA's

determination that a petitioner is not eligible for asylum, withholding of removal,

or CAT relief. To prevail … the petitioner must show that the evidence … compels

the conclusion that these findings and decisions are erroneous." *Plancarte Sauceda*

*v. Garland*, 23 F.4th 824, 831 (9th Cir. 2022) (internal quotation marks and

citations omitted).

1.      Substantial evidence supports the agency's finding that Petitioner's

asylum application was untimely.[1] Asylum applications must be "filed within 1

---

[1] The government argues that our decisions in *Al Ramahi v. Holder*, 725 F.3d 1133 (9th Cir. 2013), and *Ramadan v. Gonzalez*, 479 F.3d 646 (9th Cir. 2007), holding that we have statutory jurisdiction to review the agency's determination that Petitioner's asylum application was untimely, have been effectively overruled by *Wilkinson v. Garland*, 601 U.S. 209 (2024). Dkt. 31. We do not need to decide that issue because "we can assume *statutory* jurisdiction arguendo when the jurisdictional issue is complex, but the claim asserted clearly lacks merit." *De La Rosa-Rodriguez v. Garland*, 49 F.4th 1282, 1291 (9th Cir. 2022).

year after the date of the alien's arrival in the United States." 8 U.S.C. §1158(a)(2)(B). Petitioner filed his application on September 20, 2019, almost two years after he arrived in the United States on October 30, 2017. Petitioner argues his late filing is excused because he filed "within a reasonable period" of "changed circumstances." 8 U.S.C. § 1158(a)(2)(D); 8 C.F.R. § 1208.4(a)(4)(ii). The BIA assumed that the fact that "police continued visiting [Petitioner's ex-wife in Armenia] even after" the Spring 2018 Velvet Revolution, which overthrew the Armenian government Petitioner opposed and that persecuted him, qualified as changed circumstances. However, the agency determined Petitioner's subsequent delay of at least nine months before filing his application was not reasonable.

No evidence in the record compels us to conclude Petitioner's delay was reasonable. *See Singh v. Holder*, 656 F.3d 1047, 1056 (9th Cir. 2011) (reviewing the BIA's decision that a delay was unreasonable for substantial evidence). "[A] filing delay of less than six months after an applicant's nonimmigrant status has expired is presumptively reasonable." *Id.* A longer delay may be reasonable based on "individualized determinations." *Al Ramahi v. Holder*, 725 F.3d 1133, 1135 (9th Cir. 2013) (internal quotation marks and citation omitted). Petitioner does not point to any developments in Armenia in 2019 to explain the delay. Petitioner's hopes for an "immigrant visa through his relationship with his U.S. citizen

girlfriend," which began in the spring of 2019,[2] does not compel us to conclude that the BIA's finding that Petitioner's delay until September 2019 was unreasonable is erroneous.[3]

Petitioner's only argument that the agency erred in declining to grant him humanitarian asylum is that his asylum application was timely. Because we find substantial evidence supports the agency's determination that Petitioner's asylum application was untimely, the agency did not err in denying him humanitarian asylum.

2.     Petitioner also challenges the agency's determination that he is ineligible for withholding of removal. To be eligible for withholding of removal, applicants must establish "that it is more likely than not that" their "life or freedom would be threatened in the proposed country of removal on account of" a protected ground. 8 C.F.R. § 1208.16(b), (b)(iii). The government stipulated Petitioner suffered past persecution, which created a rebuttable presumption that his "life or freedom would be threatened" if returned to Armenia. *Id.* § 1208.16(b)(1)(i).

Substantial evidence supports the agency's finding that the government

---

[2] Petitioner's written declaration stated that the relationship began in the spring of 2019. Petitioner's opening brief states that the relationship began in 2018. The written declaration controls.

[3] Contrary to Petitioner's representation, in reaching its conclusion, the BIA considered "all the factual circumstances of the case." *Husyev v. Mukasey*, 528 F.3d 1172, 1182 (9th Cir. 2008). It cited both the events in 2018 and his relationship with his U.S. citizen girlfriend.

rebutted the presumption by showing Petitioner "no longer faces a clear probability of persecution" due to "a fundamental change in country conditions in Armenia." *See Iraheta-Martinez v. Garland*, 12 F.4th 942, 956 (9th Cir. 2021) (reviewing the agency's finding that the government demonstrated a fundamental change in country conditions for substantial evidence). The 2018, 2019, and 2020 U.S. Department of State Human Rights Reports and a 2019 Radio Free Europe article show that the 2018 Velvet Revolution ousted the government that Petitioner opposed and that persecuted Petitioner. There is evidence that since gaining power, the new government has tackled corruption through institutional reforms and criminal corruption cases, including against current and former high-ranking government officials. According to the Reports, the new government has also expanded press freedom, and allowed Armenians to express their opinions, criticize the government without reprisal, and hold political opposition rallies and protests. Thus, substantial evidence supports the agency's conclusion that the government that persecuted Petitioner "was removed from power with popular support" and "that many steps have been taken to combat corruption."

The agency did not err by "relying solely on generalized reports of changed conditions in Armenia." We have repeatedly held reliance on such generalized reports is proper so long as the agency "rationally construe[d] … [the] country report[s]" and conducted an "'individualized analysis of how [the] changed

conditions will affect the specific petitioner's situation,'" as the agency did here. *Gonzalez-Hernandez v. Ashcroft*, 336 F.3d 995, 1000 (9th Cir. 2003) (quoting *Borja v. INS,* 175 F.3d 732, 738 (9th Cir. 1999) (en banc)); *see e.g. Singh v. Holder*, 753 F.3d 826, 832-834 (9th Cir. 2014) (holding that the agency engaged in the required individualized analysis where it "identified the particular grounds on which [Petitioner] claimed he might be persecuted and cited specific relevant evidence" in several generalized reports, including State Department reports, "showing that persecution on those grounds is unlikely"). Nor does the presence of some conflicting information in the 2020 report, noting the "continuation of political violence," mean the agency's conclusions are erroneous. A finding may be "supported by substantial evidence despite the presence of conflicting or ambiguous information in the country reports" because "the agency is entitled to weigh conflicting evidence." *Singh*, 753 F.3d at 833, 835. Petitioner identifies no evidence disputing the agency's finding that "the current government has not engaged in repression against anti-corruption campaigners" like Petitioner.

Petitioner argues that the BIA erred by not considering that in 2018 "Armenian police officers went to the home of him and his former wife seeking to harm [Petitioner]." The BIA, however, repeatedly referenced this fact, so "nothing in the record or the BIA's decision indicates a failure to consider" it. *Cole v. Holder*, 659 F.3d 762, 771 (9th Cir. 2011). Petitioner may disagree with how the

agency weighed the evidence, but we reverse only if the "evidence compels a conclusion contrary to the BIA's." *Kalulu v. Bondi*, 128 F.4th 1009, 1013-14 (9th Cir. 2024) (internal quotation marks and citation omitted). This single fact does not compel finding that the agency's determination was erroneous.

Lastly, the agency did not erroneously impose the burden on petitioner "to rebut the presumptions of future persecution." Both the IJ and BIA correctly stated the government bore the burden of rebutting the presumption and expressly found that the government had done so. The agency thus "properly understood and held [the government] to its burden of showing a change in circumstances." *Iraheta-Martinez*, 12 F.4th at 956. The "overall context" of the agency's statement that Petitioner had not shown "that anyone in power now in Armenia has shown any interest in" him "makes clear that the [agency] was referring to [Petitioner's] ultimate burden of showing his entitlement to statutory withholding," not erroneously placing the burden on Petitioner. *Id.*[4]

3. Finally, substantial evidence supports the agency's determination that Petitioner is ineligible for CAT protection. "To be eligible for relief under CAT, an

---

[4] Petitioner also argues that the agency "did not address in any way whether the evidence – independent of any presumptions or the rebuttals thereof – might still establish [Petitioner's] eligibility for asylum or withholding of removal." The agency addressed that argument when it found Petitioner did not have a reasonable fear of persecution in light of changed circumstances, and as explained, that determination is supported by substantial evidence.

applicant bears the burden of establishing that she will more likely than not be tortured with the consent or acquiescence of a public official if removed to her native country." *Xochihua-Jaimes v. Barr*, 962 F.3d 1175, 1183 (9th Cir. 2020). Petitioner asserts he "suffer[ed] past torture" when, on two separate occasions in 2017, the police "forced their way into his home," threatened him and his wife "at gun point," and beat him. The Ninth Circuit has found more serious harm did not amount to torture, so these incidents do not compel the conclusion that he was tortured. *See e.g. Kumar v. Gonzales*, 444 F.3d 1043, 1055-56 (9th Cir. 2006) (affirming the agency's determination that "a month-long detention that included severe physical attacks and threats to [the petitioner's] life" was not torture). Even assuming these incidents were torture, "all evidence relevant to the possibility of future torture" must be considered. 8 C.F.R. § 1208.16(c)(3). Here, substantial evidence supports the agency's conclusion that Petitioner "does not at present face a probability of [torture] … in light of the change in political conditions." The government that persecuted him in the past is no longer in power, and there is no evidence that the current government has any interest in torturing anti-corruption activists generally or Petitioner specifically.

    **PETITION DENIED**.[5]

---

[5] The temporary stay of removal remains in place until the mandate issues. *See* Dkt. 2. The motion for stay of removal and supplemental motion for stay of removal are otherwise denied. *See* Dkt. 1, 8.